**David A. KEYS, Jr., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18786.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 13, 1965.

Decided April 29, 1965.

Petition for Rehearing En Banc
Denied June 11, 1965.

Mr. Harold David Cohen, Washington,
D. C. (appointed by this court), for appellant.

Mr. Alan G. Marer, Attorney, Department of Justice, with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, William H. Collins, Jr., Daniel J. McTague, Asst. U. S. Attys., and Harold H. Greene, Attorney, Department of Justice, were on the brief, for appellee.

Before DANAHER, BURGER and McGOWAN, Circuit Judges.

BURGER, Circuit Judge.

Keys appeals from a conviction of first-degree murder, for which no death sentence was imposed, and of two counts of assault with a dangerous weapon. That he committed the acts in question is undisputed here as in the District Court. Appellant's case was a claim of "insanity," and his chief contention on appeal is that the Government failed to establish his criminal responsibility beyond a reasonable doubt. In addition appellant raises three objections to the conduct of his trial.

(1) On appellant's pretrial motion he was committed to St. Elizabeths Hospital for 90 days for examination. On March 29, 1963, the Superintendent of that institution certified appellant competent to stand trial and gave the opinion that appellant was not suffering from any mental disease or defect on November 7, 1962, the date of the shootings for which he was being prosecuted. Appellant thereafter moved for recommittal to St. Elizabeths on the ground that the Superintendent's reports did not reflect the unanimous opinion of the government doctors who had examined him. This motion was granted and after a second examination the Superintendent, on January 9, 1964, reaffirmed the prior conclusions described above.

At trial, Dr. Owens, then Clinical Director at St. Elizabeths, Dr. Platkin, then in charge of the Maximum Security Division, and Dr. Dobbs, then Assistant Chief of Service, testified that appellant was without mental disease or defect at the time of the offenses. They testified that appellant had not displayed any symptoms of mental illness and had not exhibited any bizarre conduct not attributable, in their opinion, to malingering.

Three other St. Elizabeths psychiatrists, Drs. Dabney, Hamman and Agler, and the Hospital's clinical psychologist, Dr. Stammeyer, testified for the defense. Dr. Dabney was of the opinion that Keys had a "paranoid personality disorder," which in his opinion was a mental disease, and that Keys' acts were the product of that disorder. Dr. Hamman thought Keys suffered from a "personality pattern disturbance" and a "passive dependent personality" and that there was a "definite causal relationship" between this condition and Keys' acts. Dr. Agler believed Keys to have a "passive-aggressive personality disorder" and that there was a "likely possibility" of productivity. Dr. Stammeyer, the psychologist, thought that Keys had a mental disorder classifiable as "passive aggressive personality, passive dependent type" and that there was a causal connection between the diagnosed condition and the acts charged.

In addition to the expert testimony, there was lay testimony which would have permitted an inference of either mental disorder or the absence of it. What emerges is that both the Government and the defendant after extensive pretrial psychiatric examinations had a long, thorough "day in court" on the criminal responsibility issue. Both prosecution and defense marshaled all available evidence pertaining to the question. Sufficient evidence of mental aberration was shown to require the court to give the *Durham-McDonald* charge to the jury. Compare, *e. g.*, Heard v. United States, 121 U.S.App.D.C. ——, 348 F.2d 43, December 17, 1964 (evidence insufficient to require *Durham-McDonald* charge). Appellant argues that the evidence of insanity was so overwhelming as to require a directed verdict; we cannot agree. On the contrary the sharply conflicting lay and expert testimony presented the classic situation for jury determination of the issue.

■■ (2) Appellant asserts the trial court erred in charging the jury that "in determining the insanity issue, you must weigh all of the evidence, *including the presumption of sanity* which remains in the case and is to be considered by you along with all the other evidence on the issue of sanity." (Emphasis added.) This contention is without merit. The introduction of "some evidence" of insanity puts upon the Government the burden of proving a defendant's criminal responsibility for his acts beyond a reasonable doubt. The presumption of sanity, whatever may be its evidentiary value and weight, does not vanish from the case, as appellant would have it. That presumption is grounded on the premise that the generality of mankind is made up of persons within the range of "normal," rational beings and can be said to be accountable or responsible for their conduct; this premise is rooted in centuries of experience, has not been undermined by contemporary medical knowledge, and justifies the continuance of the presumption after introduction of evidence of insanity. That the presumption does continue, see, *e. g.*, Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); McDonald v. United States, 114 U.S.App.D.C. 120, 123, 312 F.2d 847, 850 (1962) (en banc); Greene v. United States, 114 U.S.App.D.C. 266, 314 F.2d 271 (1963); Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430 (1954). See also Blocker v. United States, 110 U.S.App. D.C. 41, 54, 288 F.2d 853, 866 (1961); Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 79–80, 62 S.Ct. 932, 86 L.Ed. 1283 (1942).

■ (3) Seven verdicts were available to the jury on the first-degree murder count: guilty of murder in first degree, without more, requiring the death penalty; murder in the first degree with unanimous recommendation of life imprisonment, requiring life imprisonment; murder in the first degree with disagreement as to punishment, requiring final sentencing by the court; murder in the second degree; manslaughter; not guilty by reason of insanity; not guilty. As an aid to the jurors, the court wisely provided each of them with a written "Form of Verdict" listing the various possible dispositions of this count and the assault counts.

After the Forelady announced the jury's verdicts, defense counsel asked to have collected the Forms of Verdict, on which the jurors had marked their votes; as they were being collected, counsel indicated a desire to poll the jury. The District Judge then caused the forms to be returned to the jurors, telling them, "Be sure to get your own." Defense counsel made no objection to this procedure.

Appellant's argument here is that the jury probably took the court's actions to mean they were bound by the notations on their forms and that the consequent meaninglessness of the poll deprived him of a substantial right. Appellant asks us in effect to speculate concerning the jurors' mental processes during the poll. "Plain error" requiring reversal is not built on such speculation.

■■ It is not open to us to speculate, as appellant would have us do, whether some jurors felt themselves bound by their assent as voted and declared *in the jury room*. A jury poll is obviously in part an "audit" or an inquiry whether they did in fact vote the result as announced. No case has ever held that the presiding judge must explain to the jury, as the appellant now contends, that jurors also have the power to undo or reverse the vote cast in the jury room. We need not reach the question whether some form of explanation ought to be given in these circumstances, since no request was made. It is surely arguable that the very act of returning the written "ballot" or vote sheet to the jurors would be treated by them as a resubmission of the announced choice for reconsideration. It would doubtless be permissible, even if not mandatory, for the trial judge on request to explain that the purpose of polling is to make certain that the true verdict of each juror is

the official verdict announced in open court.

 (4) Defense counsel's argument to the jury contained the following remarks:

> [A]ny time * * * a jury finds [a defendant] not guilty by reason of insanity, it does not mean that he is going to go out of this courthouse free. It means that maybe for a *long, long, long, long* time, until they find that he is no longer dangerous, that he is going to be kept in an institution provided by law.

(Emphasis added.) Before making his final argument the prosecutor asked the court whether he could say in reply that confinement would not necessarily be for a long time. The court asked defense counsel whether he agreed that the prosecutor might so argue. Counsel replied, "Sure, he can argue."

The prosecutor then advised the jury in his argument that while a verdict of not guilty by reason of insanity "would well send [defendant] to St. Elizabeths," the confinement would not necessarily be for a "long time" as the defense contended, since defendant would be released as soon as he was no longer dangerous. "And," he continued, "when you are thinking about that, think again of the opinion of the Clinical Director and the Chief Staff Psychiatrist at that hospital. These are the two men who have overall control. * * *" To this argument defense counsel made no objection.

Appellant now asserts that to allow this rebuttal by the prosecutor of defense counsel's dubious remarks was "plain error." We do not agree. Possibly it would have been better had the trial judge stopped defense counsel as soon as the drift of his argument concerning confinement became apparent, but even that might have adversely affected the defendant. But when defense counsel manages to get such remarks to the jury and compounds his error by consenting to comparable prosecution rebuttal on the same subject, he does not thereby create a predicate for an appellate finding of

plain error merely because he believes his tactics may have gone awry. Cf. *Lyles v. United States,* 103 U.S.App.D.C. 22, 26, 254 F.2d 725, 729, cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1957).

Affirmed.

McGOWAN, Circuit Judge, concurs in the result.