**Robert Henry HARTFORD, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20010.**

United States Court of Appeals
Ninth Circuit.

May 11, 1966.

Rehearing Denied June 20, 1966.

Wm. S. Hochman, San Francisco, Cal., for appellant.

Wm. P. Copple, U. S. Atty., Morton Sitver, Lawrence Turoff, Asst. U. S. Attys., Phoenix, Ariz., for appellant.

Before HAMLEY, KOELSCH and ELY, Circuit Judges.

HAMLEY, Circuit Judge:

Robert Henry Hartford appeals from a judgment, entered on a jury verdict, convicting him of transmitting obscene matter in the United States mails, in violation of 18 U.S.C. § 1461 (1964). The obscene matter was a letter postmarked Glendale, Arizona, which Hartford, on September 27, 1963, wrote to a registered nurse with whom he had become acquainted while he was a mental patient at Arizona State Hospital.

After entry of a plea of not guilty, Hartford's court-appointed counsel moved, pursuant to 18 U.S.C. § 4244 (1964) for a judicial determination of defendant's mental competency to stand trial. Granting the motion, the district court appointed two psychiatrists to examine Hartford. They did so and filed reports with the court. A hearing was then held at which the two doctors testified. As a result an order was entered determining that Hartford was mentally competent to stand trial.

Counsel for Hartford thereafter gave written notice that the defense would be that Hartford was "insane or mentally defective" at the time of the commission of the alleged offense. The case then came to trial, the jury was instructed on the defense of insanity, and a verdict of guilty was returned.

The sole question presented on this appeal is whether the implicit jury finding that Hartford was sane in the legal sense at the time he committed the act charged is supported by evidence sufficient to overcome a reasonable doubt.[1]

The determination of this question calls for a review of the testimony, having in view certain established principles pertaining to the defense of insanity. A person who is not legally sane at the time the act was committed may not be convicted of a crime for committing that act. In view of the court's instruction, to which no objection was taken, it is the law of this case that one is legally sane if he is mentally competent to distinguish between right and wrong, and to understand the nature of the act he was committing.

In the absence of substantial evidence to the contrary every person is presumed to be sane. Without evidence of insanity, therefore, it is not incumbent upon the prosecution to prove defendant's legal sanity. But once substantial evidence of insanity is received in evidence, the presumption of sanity disappears. The burden is then placed upon the prosecution to prove legal sanity beyond a reasonable doubt, as in the case of any essential element of the crime charged. See Buatte v. United States, 9 Cir., 330 F.2d 342, 345, rehearing denied; 331 F.2d 848; Buatte v. United States, 9 Cir., 350 F.2d 389, 391.

The jury verdict here represents a finding that Hartford was sane in the legal sense at the time he mailed the letter in question. That finding should not be set aside unless we conclude that reasonable men must necessarily possess a reasonable doubt as to Hartford's sanity at the time indicated. Buatte v. United States, 9 Cir., 350 F.2d 389, 393.

We now turn to a discussion of the evidence pertaining to the question of sanity. The case submitted by the Government consisted of the testimony of two witnesses and the introduction, as an exhibit, of the letter in question. The two witnesses were the registered nurse to whom the letter had been addressed, who testified that she received it, and a postal inspector who testified that Hartford admitted to him that he had sent the letter to the nurse.

---

1. The question was presented in the trial court by Hartford's motion for judgment of acquittal made at the close of all the evidence.

During the direct examination of these witnesses, the only testimony possibly relating to the issue of sanity was the postal inspector's statement that Hartford had told him that he, Hartford, thought the contents of the letter were obscene. On cross-examination, the nurse first stated that she was not qualified to say whether Hartford was mentally ill when she saw him at the Arizona State Hospital. Later, she stated that she knew what a paranoid state was, and knew the symptoms of such an illness, and had not observed any bizarre or unusual conduct on the part of Hartford which led her to believe that he had such symptoms. The nurse also testified, on cross examination, that Hartford "seemed all right," but added that because of her limited contact with him she was not qualified to express an opinion as to this.

The defense witnesses were Hartford and Doctors Richard E. H. Duisberg and Carl Breitner, the two psychiatrists who had made reports and testified at the hearing on mental competency to stand trial.

It was brought out during the testimony of the doctors that Hartford had a long history of hospitalization for psychiatric treatment or evaluation for a paranoia psychosis on the subject of sex. The problem had apparently always been the same—the writing of allegedly obscene matter on that subject in the form of letters and poems.[2] On a dozen or more occasions he had been committed, or returned, to New York State Hospital, the Federal Medical Center at Springfield, Missouri, or Arizona State Hospital. On at least one occasion he had been released from such an institution on a writ of habeas corpus. On eleven occasions he left without authorization. Hartford had been repeatedly picked up by postal inspectors and returned to one or another of these hospitals.

Dr. Duisberg testified that he had examined defendant in 1957 and again in 1964, and had also obtained a fairly comprehensive medical history. On the basis of his examination, considered in the light of the medical history, Dr. Duisberg expressed the opinion that Hartford was suffering from a paranoia psychosis. The doctor explained that persons so affected have persistent, unalterable, systemized delusions which are logical to them; that they are secretive, stubborn, resentful, and totally impervious to reason on the subjects on which they are paranoid; but that as to other subjects, such persons can be quite logical, with reasoning power approaching that of any other individual. On the subject of sex, Dr. Duisberg testified, Hartford's logic and judgment are distorted by paranoid thinking. The doctor expressed the opinion that "in a legal sense" Hartford is insane.[3]

On cross examination, Dr. Duisberg admitted that defendant was able to control his emotions to the extent that he refrained from writing obscene matter for a period of six months in 1956 or 1957. The doctor expressed the opinion that Hartford knew it was unlawful to mail obscene matter and knew that he had written and mailed the letter in question. Dr. Duisberg was of the opinion that Hartford was capable of perceiving obscenity when written by others but could not appreciate that anything he wrote could be obscene. Dr. Duisberg further testified in reply to a series of questions propounded by Government counsel, that signs reading "Walk at your own risk," "Swim at your own risk," and "Open at your own risk," would indicate to defendant that something was wrong or dangerous.

Dr. Carl Breitner testified that he examined Hartford for an hour and a half about three months before the trial, this being the only time he saw the defendant.

---

2. It was also brought out during Hartford's testimony that twenty-three years previously he had served a year and a half in a federal penitentiary following a conviction similar to that here under review.

3. At the hearing on Hartford's mental competency to stand trial, Dr. Duisberg testified that, in the area of sex matters, Hartford does not know right from wrong,

Dr. Breitner thought that defendant's prior hospitalization for psychiatric treatment or evaluation would not of itself indicate that he was psychotic. On the basis of that history and his examination of the defendant, however, the doctor expressed the opinion that Hartford had a mental illness categorized as a "paranoid state." The witness added that Hartford also shows the "earmarks" of schizophrenia, characterized by disorganization of thought processes and bizarreness. Dr. Breitner expressed the opinion that Hartford was and is unable to distinguish right from wrong as it applies to sending obscene matter through the mail.

On cross examination, Dr. Breitner said that Hartford might be able to look at materials written by others and perceive that they are obscene, but that he is convinced in his own mind that the materials he writes are not obscene. In Dr. Breitner's opinion, defendant had ample paranoid symptoms to warrant hospitalization in a mental hospital: grandiosity, a persecutory complex, preoccupation and lack of judgment—all evidence of a psychotic reaction. A sequence of questions concerning "risk" was asked of Dr. Breitner on cross examination and his responses were similar to those given by Dr. Duisberg.

Hartford then took the witness stand and was permitted to intersperse his answers to questions propounded to him, with lengthy and rambling statements explaining his attitude toward sex, the gradual development of his interest in the registered nurse, and the means he took to express it. Shortly after meeting the nurse while he was a patient and she was on duty at Arizona State Hospital, he began handing her and mailing to her handwritten or typewritten materials consisting principally of his past writings, selections from published works, poems and letters.

Altogether, Hartford testified, over a period of two years he gave or sent the nurse sixty-two writings or "tributes" as he called them, comprising a total of 518 pages. While conceding that much of his material was "intimate," Hartford expressed the view that because of his genuine emotional interest in the nurse, the writing could not be regarded as obscene. While Hartford testified that the nurse "accepted" many of his writings, he further testified that she returned a good deal of it to him, some unopened, cautioned him not to write such things, and complained to the doctor in charge. Hartford usually placed the most intimate matter in an inner sealed envelope marked "very intimate matter enclosed," "please do not open until and unless you love me," or "open at your own risk."

In addition to deluging the nurse with these writings, Hartford spent seventy-eight hours knitting a sweater for her. Defendant made it clear he was not saying that the nurse encouraged him to make these advances. He stated that he regarded her as a distinctly innocent and clean girl. But he also indicated, in effect, that when he asked her when she returned his first writing whether she was shocked, and she replied "Nothing shocks me," he presumed it would not offend her to receive writings of this kind from him. Stating that he believed in what he called "passionate purity," Hartford expressed the view that these writings sent to the nurse were " * * * all a glorifying, clean intimacy * * * "

Hartford made it clear at the outset of his testimony, and again at the close, that he did not believe that he was insane and did not want to be acquitted on that ground. He ended his testimony with this statement: " * * * I feel if the jury does not believe what I have done is decent, I want them to bring in a verdict of guilty." [4]

On this record we conclude that reasonable men must necessarily possess a reasonable doubt as to Hartford's sanity at the time he mailed the letter. All of the medical testimony is to the effect

---

4. In a personally prepared brief filed in his court, Hartford again asserted that he was sane. He urged this court to concur with the Government's position that the jury had adequate grounds to consider him competent.

that he was insane, in the legal sense, on that date. The testimony was impressive, being given by well-qualified psychiatrists who had examined Hartford and reviewed his history. They gave full explanations of Hartford's symptoms and their significance. The Government produced no medical testimony to the contrary, relying on cross examination of defendant's experts. We find nothing in that cross examination which undermines the specific opinions expressed by the psychiatrists.

Likewise, we find nothing in the lay testimony of the postal inspector or the registered nurse which could possibly be regarded as undermining that expert testimony. While Hartford testified that he was sane, the overall tenor and content of his testimony strongly supports the appraisal of the medical witnesses. He very obviously continues to suffer from the same psychoses manifested by the same conduct on his part which has plagued him for many years.

Reversed with directions to enter an order granting defendant's motion for acquittal and to enter a judgment accordingly.