Terrell WALKER, Petitioner,

v.

Frederick BUTTERWORTH et al., Respondents.

Civ. A. No. 77–973–C.

United States District Court, D. Massachusetts.

Sept. 28, 1978.

Norman S. Zalkind and Stephen L. Saltonstall, Zalkind & Zalkind, and Eric D. Blumenson, Suffolk University Law School, Boston, Mass., for petitioner.

Robert S. Potters, Asst. Atty. Gen., Crim. Div., Boston, Mass., for respondents.

OPINION

CAFFREY, Chief Judge.

This is a § 2254 petition for a writ of habeas corpus brought by a state prisoner, Terrell Walker, against Fred Butterworth, Superintendent of Massachusetts Correctional Institution, Walpole, Massachusetts. Petitioner is presently serving a sentence of life imprisonment imposed by the Superior Court of Suffolk County after his convictions on one count of first-degree murder of John D. Schroeder, a plain-clothed police officer, and four counts of armed robbery of Officer Schroeder, a loan company, and two customers. The defense offered was that petitioner was insane at the time he committed the charged offenses. The convictions were affirmed by the Supreme Judicial Court, and a petition for certiorari was subsequently denied. *Commonwealth v. Walker*, Mass., 350 N.E.2d 678, *cert. denied*, 429 U.S. 943, 97 S.Ct. 363, 50 L.Ed.2d 314 (1976). Petitioner has exhausted available state remedies.

■ Under 28 U.S.C.A. § 2254(a), federal habeas corpus review does not lie for every legal error, infirmity or undesirable practice occurring in a state trial, but rather is limited to those errors which violate a state prisoner's federal constitutional or statutory rights and which cannot be said to be harmless beyond a reasonable doubt. *E. g., United States ex rel. Santiago v. Vincent*, 423 F.Supp. 103, 106 (S.D.N.Y.1976), *aff'd*, 553 F.2d 94 (2d Cir. 1977); *see Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Petitioner contends here that his jury trial in August, 1974 was constitutionally defective in four respects:

(1) The court's instruction that the Commonwealth cannot take an appeal but the defendant can violated petitioner's rights to due process of law and to a constitutionally fair trial by an impartial jury;

(2) the combination of the court's requirement that the petitioner personally exercise his peremptory jury challenges, and the prosecutor's argument that this exercise demonstrated sanity, violated petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution;

(3) the confinement of petitioner in the prisoner's dock eroded the presumption of innocence and deprived petitioner of his right to a constitutionally fair and impartial trial;

(4) the court's instructions, particularly on the "presumption of sanity," reduced the Commonwealth's burden of proof and deprived him of a constitutionally fair trial on the issue of his sanity, in violation of petitioner's right to due process of law.

■ Every claim raised in support of the petition was directly addressed and rejected by a majority of the Supreme Judicial Court. Indeed, disagreement was voiced by three of the Justices only with respect to the presumption-of-sanity issue. 350 N.E.2d at 702 (Hennessey, C. J., & Kaplan, J., dissenting in part), 350 N.E.2d at 702–03 (Liacos, J., concurring). On habeas review their reasons in support of a discretionary reversal under Mass.Gen.Laws Ann. ch. 278, § 33E (West Supp. 1977–78) do not require or support a finding of constitutional error. *See Cupp v. Naughten, supra*, 414 U.S. at 146, 94 S.Ct. 396.

After a hearing and a review of the voluminous record, I rule that petitioner's application for a writ of habeas corpus should be denied and the petition dismissed.

*Rights of Appeal*

At trial, the court, in the course of its instructions to the jury, offered an explanation of why defense counsel, but not the Assistant District Attorney, had taken exception to overruled objections. The court observed that the Commonwealth enjoyed no right of appeal from "particular ruling[s] of law" made at the trial. By inference, the court suggested that the defendant could pursue an appeal from such rulings and his counsel took exceptions to its overruled objections in order to preserve that right.

The Supreme Judicial Court rejected claim of error re the mention of appeal rights. In acknowledging the sensitivity of

this subject in the context of jury instructions, the court declared that the better practice, in most trials, would be to refrain from mentioning either the appellate process or the objection and exception procedure. 350 N.E.2d at 696–97. But viewing the lengthy charge as a whole, the court concluded that the challenged portion of the instruction "was plainly designed to protect the defendant from prejudice by explaining his counsel's unquestionably proper actions in preserving his client's rights." *Id.* 350 N.E.2d at 696–97. Therefore, it ruled that cases such as *United States v. Fiorito*, 300 F.2d 424, 426–27 (7th Cir. 1962), and *State v. Mount*, 30 N.J. 195, 212–15, 152 A.2d 343 (1959), were distinguishable because these remarks were not intended to dilute the jurors' appreciation for the significance, correctness, or permanence of their verdicts. *Id.* 350 N.E.2d at 696; *cf. People v. Johnson*, 284 N.Y. 182, 187–88, 30 N.E.2d 465, 467 (1940).

Petitioner now contends that the potential effect of the instruction on the jury, not the well-intentioned motive of the trial judge, should have been the focal point of the reviewing court. He argues that coming from the judge, the remark was prejudicial because it skewed the jury's sense of responsibility by allowing its members to believe that a mistaken decision against the Commonwealth was final, but that an error against the defendant could always be corrected.

The precise contours for federal habeas review of an erroneous state-court instruction have been forcefully articulated by the Supreme Court:

> Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.
>
> . . . [A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Boyd v. United States*, 271 U.S. 104, 107 [46 S.Ct. 442, 443, 70 L.Ed. 857] (1926). . . . [A] judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.
>
> . . . [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process. *Cupp v. Naughten, supra,* 414 U.S. at 146–47, 94 S.Ct. at 400.

Neither *Fiorito* nor *Mount*, relied on by plaintiff, involved federal habeas review of a jury charge delivered at a state court proceeding. Indeed, both decisions relied upon the broad, nonconstitutional, supervisory-power grounds that *Cupp* rejected as alien to habeas analysis. 414 U.S. at 146, 94 S.Ct. 396, *see* 300 F.2d at 427, 152 A.2d at 352. Moreover, the jury instructions challenged in *Fiorito* flagrantly invited a juror to conclude that his factual determination was preliminary and thus unimportant. *See* 300 F.2d at 425–27. The instruction in the instant case, however, did no more than say that the judge's rulings of law were not final with respect to the defendant. *See United States v. Miceli*, 446 F.2d 256, 259–60 (1st Cir. 1971). It invited no abdication of the jury's exclusive province to find facts. Accordingly, *Fiorito* and *Mount* are distinguishable and do not control this case.

■ I concur with the Supreme Judicial Court that a fair reading of the challenged portion of the instruction suggests that it was gratuitously intended to benefit Walker, not to prejudice him. Speculation about the effect of a discrete portion of a 57-page charge, on the minds of lay jurors who sat through a two-week trial, is an uncertain task for a judge as well as for counsel. In

its charge, the trial court made it clear to the jury: that the Commonwealth was obligated to prove the petitioner's guilt beyond a reasonable doubt; that their duty to pass upon the guilt or innocence of the defendant was a "grave," "solemn," and "heavy" one; that their verdict should be free of bias, prejudice or hostility; that speculation, guesswork, surmise or conjecture should play no part in their consideration; that they were the sole "judges . . . [and] final arbiters of the facts;" that their analysis of testimony should be fair, impartial, and dispassionate; and that they must accept and apply the law as instructed. Thus, even assuming that effect rather than intent is the proper inquiry, the trial judge's comment, in the context of the entire charge, plainly did not encourage, invite or suggest that the jury violate their oath and find the petitioner guilty because of the availability of appellate review on his behalf. Thus, applying the *Cupp* standard to this instruction, I conclude that the reference to the mechanics of appeal did not have the effect of prejudicially weakening the jurors' sense of their responsibility to find the facts and objectively determine guilt or innocence. *Cf. Dunn v. Perrin,* 570 F.2d 21, 25 (1st Cir. 1978), *cert. denied,* —— U.S. ——, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978). Accordingly, I rule that the charge did not deny petitioner his constitutional rights to due process of law and a fair trial by an impartial jury.

### Prisoner's Dock

Petitioner's second contention is that he was unconstitutionally compelled to appear before the jury in the "prisoner's dock." Absent unusual circumstances, it is the customary practice in Massachusetts that defendants in criminal cases sit in a dock. *E. g., Commonwealth v. Walker, supra,* 350 N.E.2d at 695. The dock is a box approximately four feet square and four feet high. It is open at the top so that the defendant's head and shoulders can be seen when he or she is seated. The dock is placed typically at the center of the bar enclosure which separates the spectators' section from that portion of the courtroom reserved for trial principals. The dock is usually fifteen to twenty feet behind counsel table, and is sometimes on a raised platform. Thus, the dock is generally closer to exits than counsel table.

At a pretrial hearing, the court offered the following reasons for placing petitioner in the dock and denying his motion to sit at counsel table:

THE COURT: . . . You have got an attorney who is going to be sitting with you, and I will give you all the time you want to walk back and forth to your client to have any discussions that you want with him, but I would prefer not to have a defendant in a murder case sit at the counsel table.

Petitioner objected timely. On appeal, petitioner contended that forcing him to sit in the dock deprived him of his rights to a fair and impartial trial, the presumption of innocence, non-suggestive eye-witness identifications, due process of law, and unrestricted access to counsel. The Supreme Judicial Court, noting that these same arguments had been presented and rejected in other appeals, reaffirmed that "it is within the sound discretion of the trial judge whether to grant a defendant's request to sit at counsel's table or elsewhere." *Commonwealth v. Walker, supra,* 350 N.E.2d at 695–96, *citing Commonwealth v. Bumpus,* 362 Mass. 672, 680, 290 N.E.2d 167 (1972) (murder, armed robbery convictions), *citing Commonwealth v. Jones,* 362 Mass. 497, 500–01, 287 N.E.2d 599 (1972) (armed robbery, jury-waived trial). I am mindful of the crimes charged, the defendant's "reputation," the court's assurance of ample time to consult with counsel, and the "crucial" accomplice identification testimony that was "presumably" unaffected by petitioner's courtroom location. The Supreme Judicial Court held that the trial judge committed no arbitrary or unreasonable action demonstrating an abuse of discretion. 350 N.E.2d at 696.

Petitioner's position here against the use of the dock is now grounded upon the presumption of innocence and the due-process right to a fair trial. Conceding as "impossi-

ble" any effort to show actual prejudice to these rights petitioner contends, on the one hand, that no such showing is necessary, and on the other, speculates as to the range of prejudicial inferences a jury might deduce from observing this defendant confined in the dock. Petitioner also claims that discretionary use of the dock is *per se* constitutionally infirm because the practice is arbitrary and furthers no essential state policy.

In my judgment, the prisoner's dock is an anachronism in a modern criminal trial which could have been abandoned years ago. But it overstates the case to label the dock as "atavistic" or to characterize it as "closely analogous" to the unconstitutional practice of compelling defendants to stand trial before a jury while dressed in identifiable prison garb. *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126, *rehearing denied*, 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976).

█ Unlike the practice discussed in *Estelle v. Williams, supra,* at 505, 96 S.Ct. 1691, a discretionary requirement to have a defendant sit in a designated spot such as the dock can serve several essential state policies: (1) it identifies the accused person to the jury, *see Commonwealth v. Bumpus, supra,* 362 Mass. at 680, 287 N.E.2d 599; (2) it minimizes the danger of harm to the public, court, counsel, jurors, and witnesses, *Commonwealth v. Walker, supra,* 350 N.E.2d at 696 n.18; and (3) it encourages the maintenance of courtroom order and decorum without the use of such drastic measures as shackling, handcuffing, or gagging, *id.; see Commonwealth v. Boyd,* 246 Pa. 529, 534, 92 A. 705 (1914). While it is true that other procedures or better-trained personnel might achieve the same goals, that fact does not render use of the dock unconstitutional. As an instrument of physical segregation, the dock is no less distinctive or identifiable than the frequent practice of requiring a defendant to sit on one side of counsel table or at one end of the front public bench. Thus, I conclude that the custom of segregation in the dock is not unconstitutional *per se* because, as a

general practice, it presents neither a "constant [implicit] reminder of the accused's condition . . . [so as to] affect a juror's judgment . . . [or] is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." *Estelle v. Williams, supra,* 425 U.S. at 504–05, 96 S.Ct. at 1693.

█ Petitioner's speculations concerning the impact of the dock on the jurors are, admittedly, unsupported in the record, and, in any event, are dispelled by his own mockery of the dock as an ineffective security device to corral the dangerous. For these reasons, as well as those stated by the Supreme Judicial Court, *Commonwealth v. Walker, supra,* 350 N.E.2d at 696, I rule that petitioner's discretionary segregation in the dock neither diluted his presumption of innocence nor denied him a fair and impartial trial. Alternatively, if placement in the dock could be viewed as having the probability of encouraging the jury to view the petitioner as violent, dangerous, and factually guilty of the crimes charged, *see Estelle v. Williams, supra,* 425 U.S. at 504, 96 S.Ct. 1691, such an impression was cumulative and thus harmless error because testimony offered on behalf of petitioner suggested that he was prone to commit violent crime, and that due to his alleged mental disease he was unable to conform his conduct to the law. Indeed, the nature of petitioner's defense forced him to concede that he actually committed the offense. Allowing petitioner to sit elsewhere than the dock would not have altered this testimony or appreciably tempered its effect on the jury. Therefore, even if there was any constitutional impairment of the presumption of innocence or the fairness of the trial, I rule it was harmless beyond a reasonable doubt.

### Peremptory Challenges

Prior to empanelling the jury, the judge at petitioner's trial ruled that defendant must personally exercise his peremptory challenges. Counsel objected to the requirement that petitioner speak, on the

ground that it might interfere with the insanity defense by impressing the jurors with petitioner's competency. In accordance with the ruling, the defendant spoke in open court during the voir dire, stating to the court and each juror, either "I am content," or "I challenge." Later, in the portion of his final argument rebutting Walker's insanity defense the prosecutor stated:

> Ask yourself about this particular defendant. What do you think? Do you think he knew what he was doing when he stood up there and said, "I am content with this juror? I am content with this juror? I am content with this juror?" Do you think he knew what he was doing then?

On appeal, petitioner argued that the compelled personal exercise of peremptory jury challenges, as well as the prosecutor's prejudicial and confusing reference to the exercise in his summation, violated the defendant's privilege against self-incrimination and his right to a fair and impartial jury. The Supreme Judicial Court rejected both claims of error. The Court held "sound" the long-standing practice in the Commonwealth of requiring one accused of first-degree murder "after consultation with his attorney, personally to announce his contentment or dissatisfaction with prospective jurors . . .", *Commonwealth v. Walker, supra,* 350 N.E.2d at 689, *citing Commonwealth v. Millen,* 289 Mass. 441, 476–77, 194 N.E. 463, *cert. denied,* 295 U.S. 765, 55 S.Ct. 924, 79 L.Ed. 1706 (1935). *See generally Swain v. Alabama,* 380 U.S. 202, 212–20 & n.9, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). A defense of insanity at the time of commission of the offense did not derogate from the wisdom of or the protection afforded by the practice. *Id.,* 350 N.E.2d at 689–90. Although the Court criticized the prosecutorial comment as ill-advised, it believed any adverse effect was cured by instructions to the jury.

 In the instant application, petitioner does nothing more than repeat, though with some embellishment, the Fifth, Sixth, and Fourteenth Amendment objections he raised earlier. Petitioner's contentions that the prosecutor's argument impaired his rights to confrontation and to make peremptory challenges are totally without merit. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 n.15, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Petitioner also asserts that requiring him to appear to make substantial decisions before the jurors incriminated him, because it assisted the Commonwealth's proof of an ultimate element of its case, namely his sanity at the time of the offense. *See Commonwealth v. Kostka,* 350 N.E.2d 444, 451, 452 (Mass.1976). That argument is overstated. An intelligent and knowing peremptory challenge by a defendant is most probative of that defendant's competency *at the time of trial* to consult with his lawyer and to rationally, as well as factually, understand the proceedings against him. *See Dusky v. Ohio,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). The central issue at this trial, however, was petitioner's sanity *at the time of the offense,* some seven months earlier. Although it is conceivable that a juror could infer past sanity from a demonstration of present competency, the logical leap is a substantial one. Indeed, the unlikelihood of such an inference underlay a much earlier rejection by the Supreme Judicial Court of essentially the same argument: To compel the defendants personally to challenge jurors at a trial for which they were found by preliminary examination to be competent and presumed to be competent, added nothing by way of evidence to the ultimate issue of their responsibility for the crime committed. *Commonwealth v. Millen, supra,* 289 Mass. at 477, 194 N.E. at 480. In any event, a similar inference from a display of speech and thought processes could easily be drawn from petitioner's failure to disrupt the trial with bizarre behavior, from his obvious ability to consult with his attorney, and to have numerous whispered conversations with his attorney, and from his apparent comprehension of the nature of the proceedings. Thus, acceptance of petitioner's argument would necessitate isolating every defendant asserting an insanity defense from the jury's view so that no potentially adverse

inferences could be drawn from any rational demeanor or conduct on the part of defendant during the trial. Such a procedure is unwarranted, and, if compelled, would probably be violative of the Confrontation Clause. Finally, the exercise of the challenges does not fall within the terms of the Fifth Amendment privilege, because the testimonial or communicative *content* of the words spoken is not probative of anything incriminating. *See generally United States v. Dionisio,* 410 U.S. 1, 5–7, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

The second prong of petitioner's argument is that the prosecutor's comment on the exercise of the challenges was fundamentally unfair, prejudiced his right to an impartial jury, and transformed the prosecutor into a witness not subject to cross-examination. It is highly improper for a prosecutor to refer in his closing argument to matters outside of the evidence, or to go beyond the fair inferences from the evidence. In this case, the prosecutor did both: The peremptory challenges were not evidence, nor could there be any fair inference that the requirement, of the actual exercise of personal challenges, was probative of sanity at the time of the offense. At a minimum, this prosecutor breached recognized standards of professional conduct. *See, e. g., A. B. A. Standards Relating to the Prosecution Function and the Defense Function* (Approved Draft, 1971), Standards 5.8(a), 5.9.

The question presented here, however, is whether this unfair prosecutorial argument amounted to the denial of a constitutional right. As in *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), *rev'g,* 473 F.2d 1236 (1st Cir. 1973), the prosecutor's comment is essentially challenged on due process grounds. Though precedential only as a plurality opinion, *Donnelly* counsels a distinction between ordinary, albeit improper trial error of a prosecutor, and the sort of egregious prosecutorial misconduct that amounts to a denial of constitutional due process. *Id.* at 647–48 & n.23, 94 S.Ct. 1868. Such an analysis is most appropriately applied to summations, for as the Court observed:

Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions [as using false evidence]. Such arguments, like all closing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations. . . . [H]ere there was neither the introduction of specific misleading evidence important to the prosecution's case in chief nor the nondisclosure of specific evidence valuable to the accused's defense. There were instead a few brief sentences in the prosecutor's long and expectably hortatory closing argument which might or might not suggest to a jury that the respondent had unsuccessfully sought to bargain for a lesser charge. We find nothing in *Brady* [*v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] to suggest that due process is so easily denied. *Id.* at 646–47, 94 S.Ct. at 1873. *See also Cupp v. Naughten, supra,* 414 U.S. at 146–47, 94 S.Ct. 396.

■ Although the trial court did explain to the jury the nature of and the reason for defendant's personal exercise of the peremptory challenges, petitioner would ascribe constitutional error to the court's failure to specifically instruct the jury to disregard the improper argument on the subject. That contention must be rejected. Both counsel and the court had admonished the jury that none of the argument by the lawyers constituted evidence. Moreover, the court instructed that: "Evidence is what you get from the lips of witnesses under oath together with any exhibits. . . ." By implication, anything that

the jury observed prior to the testimony of the first witness was neither evidence nor a predicate for the drawing of inferences. Unlike the arguments in the cases cited by petitioner, these remarks were not highly inflammatory, were not cumulative of other serious error, and did not unduly confuse the issue of mental responsibility at the time of the offense, considering the charge as a whole. *Cf. United States v. Williams,* 523 F.2d 1203, 1207–08, 1209–10 (5th Cir. 1975); *United States v. Schwartz,* 325 F.2d 355, 357–58 (3d Cir. 1963). Thus, they did not intrinsically demand a specific curative instruction, and, under the broad standards of *Donnelly* and *Cupp,* did not offend due process in light of all the circumstances of this case.

### Presumption of Sanity

Petitioner's final contention is that the trial court's instructions unconstitutionally reduced the Commonwealth's burden of proof on the issue of sanity. The following three portions of the instructions are claimed to be violative of the Due Process Clause:

1. "Now, the defense has raised the issue of legal mental capacity to commit a crime. Generally, when a person is charged with a criminal offense and there is no evidence introduced concerning his mental condition, under such circumstances it is to be presumed that the person charged with the crime was of sufficient mental capacity to commit it. We assume under those circumstances, as I just recently indicated, that the man has the mental capacity to commit a crime. The law states that in such cases there is a presumption that a person is sane";

2. "In assessing a defendant's mental responsibility for crime, the jury should weigh[1] the fact that a great majority of men are sane and the probability that any particular man is sane. Now this assessment is to be made in each case in the light of the evidence introduced, the circumstances that you have heard. The jury are the sole judges of the credibility and weight of all evidence on the issue of insanity. That includes the testimony of those who gave opinions as to legal mental capacity.

The opinion of such a witness is not a required conclusion. The jury may believe, but is not compelled to believe, any such testimony or opinion given by an expert. . . . [I]t is for the jury to determine whether or not the fact that a great majority of men are sane and the probability that any particular man is sane may be deemed to outweigh the evidential value of any expert testimony that he is insane."

3. "The Commonwealth must prove that the defendant was reasonably sane beyond a reasonable doubt . . .."

On appeal, petitioner first argued that the instruction that the probability of defendant's sanity might outweigh contrary expert evidence unconstitutionally reduced or shifted the prosecution's burden of proof. But the Supreme Judicial Court held that since the jury was told emphatically (and repeatedly) that the Commonwealth must prove sanity beyond a reasonable doubt,[2] there was no reversal of the prosecution's burden. *Commonwealth v. Walker, supra,* 350 N.E.2d at 699–700. The court reasoned further that the judge's instruction did not permit a sanity finding based solely on the presumption because the jury had been instructed to consider "*all* the evidence." Accordingly, the jurors might have considered probative of sanity such evidence of petitioner's planned and intelligent criminal

---

1. In his brief, petitioner's quotation of this last instruction substitutes the word "weight" for the word "weigh." The official transcript, at 1673, uses the word "weigh." This Court, like the Supreme Judicial Court, *Commonwealth v. Walker, supra,* 350 N.E.2d at 699, will rule on the basis of the precise language set forth in the transcript.

2. *E. g.:*

The burden is upon the Commonwealth to prove that the defendant was legally sane beyond a reasonable doubt and that he was legally responsible for any criminal offense that he may have committed. [Transcript at 1671]

conduct as was supplied by accomplice testimony, eyewitness testimony, observer testimony shortly after the crime, and the circumstances of the robbery and murder themselves. *Id.* 350 N.E.2d at 700–01.

Petitioner also argued that the challenged instructions violated the due process requirements of *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), and *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), with respect to the use of presumptions and inferences to establish an element of a criminal offense. The Supreme Judicial Court rejected this contention, holding that "since sanity is not an element of the crimes charged," that line of Supreme Court authority was inapposite. *Commonwealth v. Walker, supra,* 350 N.E.2d at 700 & n.26, *quoting Commonwealth v. Kostka, supra.*

Petitioner then contended that the trial judge vitiated the burden of proof by instructing the jury that in order to convict, it need only find the petitioner "reasonably sane beyond a reasonable doubt." The Supreme Judicial Court disagreed, holding that the trial judge had made an "unfortunate slip of the tongue" which was remedied by "repeated references to the correct standard of 'legally sane beyond a reasonable doubt.'" *Commonwealth v. Walker, supra,* 350 N.E.2d at 699 n.23. Finally, petitioner urged that the jury's finding of sanity was against the weight of the evidence and that the presumption-of-sanity instruction, in these circumstances, impermissibly confused the jury. The Supreme Judicial Court believed otherwise. *Id., supra,* 350 N.E.2d at 698–701.

▮ In his application to this Court, petitioner vigorously renews these four rejected contentions. First, petitioner argues that the second challenged instruction allowed the jury to find the defendant sane *solely* on the statistical probability that most defendants are sane. The likelihood of this path of juror analysis is said to follow from the fact that the Commonwealth introduced no expert evidence to rebut defense testimony supporting insanity which was offered by petitioner's mother, a

psychiatric counselor, a psychiatrist, and a clinical psychologist. This view of the evidence introduced at trial is overly narrow. It ignores the principles that unrebutted expert or lay testimony may be disbelieved by a jury because of a witness' interest, demeanor, or unpersuasiveness, *see United States v. Dube,* 520 F.2d 250, 251–52 & n.1 (1st Cir. 1975), that the most convincing proof of a defendant's mental state at the time of the offense is often his conduct immediately before, after, and during its commission, and that the failure of the government to introduce any affirmative evidence of sanity does not automatically prevent a jury finding that defendant was sane beyond a reasonable doubt, J. Moore, *Moore's Federal Practice* ¶ 26.04[4], at 26–41 (1975). It is worth noting that neither this nor any portion of the mental capacity charge instructed the jurors that they could rely in this case solely on the presumption of sanity or the "mere statistical probability" of sanity. Contrary to petitioner's suggestive reading, the charge also directed the jurors "to consider and look at the whole evidence regarding the mental condition of the defendant. . . . [and] to determine again on all the evidence and all of the circumstances whether the defendant did or did not lack mental capacity to commit a crime." In this context, the "weighing" of the presumption and the expert testimony is explainable as an inartful but harmless-error description of the rebutting of a presumption.

For the obvious reasons of sympathy and interest, the jury could have discounted the probative worth of the testimony by petitioner's mother concerning a long pattern of uncommon behavior. Dr. Gatti's opinion of insanity, based as it was only on a single interview of less than two hours some eighteen months before the offense could well have been rejected by the jurors because of the lack of a more substantial and up-to-date basis of observation, and because of Gatti's concession that Walker's condition did not warrant hospitalization. Dr. Seymour's opinion, though grounded in an extensive consultation, was flawed to some de-

gree by the date of examination, some five months after the offense. *Cf. United States v. Dube, supra,* at 252 & n.2. Ms. Helms, who was not qualified as an expert, added only that she had consulted with Terrell Walker on numerous occasions and, as a result, sought to place him in a mental hospital and refer him to Dr. Gatti.

■ The election by the Commonwealth to call no medical witnesses in rebuttal at the conclusion of the defendant's case, in my judgment, amounted to a tactical decision by the Commonwealth's counsel to risk sustaining its burden of proving sanity beyond a reasonable doubt by reliance on the cumulative effect of the accomplice, eye witness, and subsequent witness testimony of witnesses called by it, plus the testimony elicited during the cross-examination of defendant's witnesses.[3] *See id.* at 251. Ample evidence from non-medical sources, capable of supporting the jury's finding of sanity, *United States v. Dube, supra,* at 253 & n.4, 255 (Campbell, J., concurring); *Commonwealth v. Laliberty,* 366 N.E.2d 736, 742 (Mass.1977), suggested that petitioner planned the robbery, premeditated the shooting, effected an escape, and instigated a concealment. The availability of such evidence for jury consideration, and the Court's proper instruction that "*all* the evidence" was to be evaluated thus lead me to reject petitioner's contention that his conviction rests on *nothing more than* a statistical probability of sanity.

■ Petitioner's second argument requests an adjudication of unconstitutionality with respect to the Commonwealth's practice of allowing the presumption of sanity to go to the jury for its evidential value, even after the introduction of defense evidence of insanity. *See Commonwealth v. Kostka, supra,* 350 N.E.2d at 453. The overwhelming majority of the states and of the federal Circuits follow a different rule: if a defendant raises the defense of insanity and offers some quantum of evidence in its support, the presumption of sanity drops out of the case as a matter of law and never reaches the jury. *E. g., United States v. Dube,* 520 F.2d 250, 251 (1st Cir. 1975); *United States v. Jacobs,* 473 F.2d 461, 464 (8th Cir. 1973), *cert. denied,* 412 U.S. 920, 93 S.Ct. 2740, 37 L.Ed.2d 147 (1972); *Hartford v. United States,* 362 F.2d 63, 64 (9th Cir. 1966), *cert. denied,* 385 U.S. 883, 87 S.Ct. 174, 17 L.Ed.2d 110 (1966); *Fitts v. United States,* 284 F.2d 108, 112 (10th Cir. 1960); *Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89, 95–96 (1970). However, under the approach of Massachusetts as well as that of the majority of jurisdictions, a reasonable-doubt burden of persuasion on the issue of sanity rests squarely on the prosecution and never shifts, and the jury was so charged. *E. g., Commonwealth v. Kostka, supra,* 350 N.E.2d at 451. The only difference is that under Massachusetts law the prosecution's burden to prove sanity beyond a reasonable doubt may be assisted by the presumption. Although continued evidentiary use of an arguably rebutted presumption has been criticized by legal commentators, *e. g.,* 9 J. H. Wigmore, *Evidence* § 2491, at 290 (3d ed. 1940), and rejected by most other jurisdictions, *but see United States v. Harper,* 450 F.2d 1032, 1038–39 (5th Cir. 1971); *Keys v. United States,* 120 U.S.App.D.C. 343, 345, 346 F.2d 824, 826 (1965), *cert. denied,* 382 U.S. 869, 86 S.Ct. 144, 15 L.Ed.2d 108 (1965); *People v. Silver,* 33 N.Y.2d 475, 482, 354 N.Y.S.2d 915, 921, 310 N.E.2d 520, 524 (1974), unpopularity, or even uniqueness, does not necessarily equate with unconstitutionality. *Cf. Patterson v. New York,* 432 U.S. 197, 211, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Leland v. Oregon,* 343 U.S. 790, 798–99, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The Supreme Judicial

---

**3.** Petitioner cites a number of cases for the proposition that judgment of acquittal is demanded as a matter of law when the prosecution offers no expert medical testimony to rebut similar defense testimony. *United States v. Smith,* 437 F.2d 538, 540–41 (6th Cir. 1970); *Hartford v. United States,* 362 F.2d 63, 64, 67 (9th Cir. 1966); *McKenzie v. United States,* 266 F.2d 524, 527–28 (10th Cir. 1959); *Fielding v. United States,* 102 U.S.App.D.C. 167, 251 F.2d 878, 880 (1957). *But see United States v. Dube,* 520 F.2d 250, 251 (1st Cir. 1975). All, however, are distinguishable as federal prosecutions governed by the nonconstitutional holding of *Davis v. United States,* 160 U.S. 469, 487–88, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

Court is the ultimate expositor of the law of Commonwealth, and its construction of the scope of the insanity defense and the presumption existing under state law is binding on this Court, since none of the exceptions to the doctrine are applicable. *Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In addition, the United States Supreme Court has recently cautioned lower federal courts to ponder carefully any Due Process Clause challenges in this area of state allocations of the burden of proof:

> [W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is "normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion," and its decision in this regard is not subject to proscription under the Due Process Clause unless "it offends some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental." [citations omitted]. *Patterson v. New York, supra*, 432 U.S. at 201–02, 97 S.Ct. at 2322.

As illustrated by the thoughtful analysis in *Commonwealth v. Kostka, supra*, 350 N.E.2d at 454–58, Massachusetts carefully distinguishes, and limits, the procedural aspect of the presumption of sanity from the substantive operation of its underlying facts. Only the later facts, and the possible inferences flowing therefrom, are weighed by the jury. *Id., supra*, 350 N.E.2d at 454. Those very facts "are considered to be part of the jury's 'common experience that most people . . . are sane.'" *Id., supra*, 350 N.E.2d at 454, 457–58, *quoting United States v. Dube, supra*, at 255 (Campbell, J., concurring). Thus, the implementation of the minority position in Massachusetts is carefully circumscribed and always coupled with an undiminished burden of persuasion on the prosecution to prove the fact of sanity beyond a reasonable doubt. In my judgment, this practice of allowing the jury only to consider the facts underlying the

presumption does not offend the fundamental principles of justice underlying the Due Process Clause. Indeed, in the seminal but nonconstitutional decision in *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), the Supreme Court specifically contemplated that the presumption of sanity would go to the jury for its determination as to whether it had been so far impaired by contrary evidence as to be overcome:

> Giving to the prosecution, where the defence is insanity, the benefit in the way of proof of the presumption in favor of sanity, the vital question from the time a plea of not guilty is entered until the return of the verdict, is whether upon all the evidence, by whatever side adduced, guilt is established beyond reasonable doubt. If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offense charged. *Id.* at 487–88, 16 S.Ct. at 858.

Lastly, as to this issue the Commonwealth's practice receives *a fortiori* support from more recent decisions by the Court, which have upheld more stringent state practices placing the burden of persuasion on the issue of insanity upon the defendant, in terms of an affirmative defense requiring a showing by either a preponderance of the evidence or beyond a reasonable doubt. *Patterson v. New York, supra*, 432 U.S. at 206–11, 97 S.Ct. 2319; *Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976) (appeal dismissed for want of a substantial federal question); *Leland v. Oregon, supra*, 343 U.S. at 798–99, 72 S.Ct. 1002; *cf. Mullaney v. Wilbur, supra*, 421 U.S. at 703 n.31, 95 S.Ct. 1881. *See also Grace v. Hopper*, 566 F.2d 507, 509–10 (5th Cir. 1978).

Petitioner's final two arguments also must be dismissed. In the context of the entire charge, the trial judge's inadvertent statement that the prosecution had

only to prove petitioner "reasonably" sane beyond a reasonable doubt did not so lessen the Commonwealth's burden of proof as to deprive Walker of due process. As the Supreme Judicial Court observed, the lengthy charge contained repeated references to the correct standard of "legally sane beyond a reasonable doubt." *Commonwealth v. Walker, supra*, 350 N.E.2d at 699 n.23. The slip of the tongue was so isolated that it surely did not taint the entire trial. *See Cupp v. Naughten, supra*, 414 U.S. at 147, 94 S.Ct. 396. I also agree with the Supreme Judicial Court that the portion of the charge describing the "general" operation of the presumption in cases "where no evidence is presented by either side on the issue of sanity" was introductory, and was offered to facilitate juror comprehension of the later-explained, more complex operation of the presumption when an insanity defense is raised. *See Commonwealth v. Walker, supra*, 350 N.E.2d at 699. Accordingly, I am not persuaded that these two aspects of the insanity instruction, which should not be viewed in artificial isolation, rendered it so confusing and incorrect as to make the errors rise to constitutional dimension. *See generally Cupp v. Naughten, supra*, 414 U.S. at 147–50, 94 S.Ct. 396; *Leland v. Oregon, supra*, 343 U.S. at 800, 72 S.Ct. 1002. Citing *Barnes v. United States, supra*, and *Turner v. United States, supra*.

■■■ Petitioner contends that the presumption of sanity runs afoul of the Due Process Clause because there was a "sufficiently real possibility" that the presumed fact did not follow from the proved[4] basic fact. The Supreme Judicial Court distinguishes *Barnes* and *Turner* as concerned with the proscribed use of inferences to establish an element of the crime charged. Sanity, in the Supreme Judicial Court's view, was not an "element" of any given crime. Rather, sanity only became a necessary "fact" of the crime charged in those few cases in which an insanity defense is maintained. *Commonwealth v. Walker, su-*

*pra*, 350 N.E.2d at 700 & n.26; *Commonwealth v. Kostka, supra*, 350 N.E.2d at 455–56 & n.16. Here petitioner challenges the significance of this distinction on the basis of the holding in *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." But regardless of the correctness of the state court's distinction, to which deference must be accorded, *see, e. g., Patterson v. New York, supra*, 432 U.S. at 201–02, 97 S.Ct. 2319, petitioner's challenge fails in light of the Supreme Court's recent refusals to literally apply *Winship* to even harsher state procedures relating to the defense of insanity. *Id.* at 205–07, 210–11, 97 S.Ct. 2319; *Rivera v. Delaware, supra. See also United States v. Dube, supra*, at 255 (Campbell, J., concurring).

■■■ In addition, petitioner's interpretation of the presumption of sanity is mistaken. The commonly accepted version of the presumption is that because of the judicially noticed fact that most persons are sane, there is a presumption, which is rebuttable, that any particular defendant is sane. Petitioner would alter this understanding in any case in which the presumption is submitted to the jury. He contends that in cases where "the defendant is a man who has satisfied the burden of production by presenting sufficient expert testimony of his insanity," the presumed fact, "that this defendant is sane," does not follow from the judicially noticed fact. But petitioner's successful carrying of his burden of production does not alter the character of the underlying judicially noticed fact. Rather, under the Massachusetts procedure, it only calls into question for the jury whether the presumed fact of this defendant's sanity has been rebutted, by defense witnesses or proved beyond a reasonable doubt by all the evidence relied upon by the Commonwealth.

---

4. The "proved" fact, *i. e.* that most people are sane, more accurately should be characterized as a judicially noticed fact.

*E. g.*, *Keys v. United States, supra,* 120 U.S.App.D.C. at 345, 346 F.2d at 826; *People v. Silver, supra,* 33 N.Y.2d at 482, 354 N.Y.S.2d at 921, 310 N.E.2d at 524. *See Barnes v. United States, supra,* 412 U.S. at 842–43, 93 S.Ct. 2357.

■ Finally, much of petitioner's argument under *Barnes* and *Turner* is based on the erroneous premise that the trial judge allowed the jury to support the conviction *solely* on the presumption of sanity. As discussed above, that clearly was not the case. The jury was instructed to consider all of the evidence, which included accomplice, eyewitness, and subsequent observer testimony bearing on the issue of petitioner's sanity at the time of the offense.

For all these reasons, I rule that the utilization of the presumption of sanity in this case did not unconstitutionally reduce the burden of persuasion on the prosecution or otherwise violate petitioner's rights under the Due Process Clause of the Fourteenth Amendment. *Cf. United States v. Dube, supra,* at 254–55 (Campbell, J., concurring).

Accordingly, because of the absence of federal constitutional error at Walker's trial, the petition for a writ of habeas corpus should be denied and respondent's motion to dismiss the petition should be granted.