UNITED STATES of America,
Plaintiff-Appellee,

v.

Carl FIORITO, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Theodore DE ROSE, Defendant-Appellant.

Nos. 13360, 13361.

United States Court of Appeals
Seventh Circuit.

March 19, 1962.

Martin S. Gerber, George B. Collins, Anna R. Lavin, Julius Lucius Echeles, Chicago, Ill., for appellants.

James P. O'Brien, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before KNOCH, CASTLE, and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The defendants, Carl Fiorito and Theodore DeRose, were convicted, following a jury trial, on a two-count indictment charging each with violations of 26 U.S. C.A. § 4705(a) and 21 U.S.C.A. § 174. Fiorito was sentenced to a term of twenty years on each count, the sentences to run concurrently. DeRose was sentenced to concurrent ten year terms. Each of the defendants appealed.

Both appeals present claims by the respective defendant of reversible error arising from statements made by the trial judge to the jury preliminary to the giving of the formal instructions, rulings on the admission of testimony, the instructions given, and permitting exhibits to be taken to the jury room. DeRose, in his appeal, makes the additional contention that his motion for severance was improperly denied. Fiorito, in his appeal, additionally contends that the evidence is insufficient to support his conviction, that reversible error occurred in the disposition of motions and the giving and rejection of instructions relating to entrapment, rulings excluding testimony, improper impeachment of defense witnesses, prejudicial misconduct of the prosecutor and the government's main witness, and the denial of material sought under the provisions of 18 U.S. C.A. § 3500.

In the interest of complete accuracy the trial judge's statements to the jury, of which complaint is made, are set forth verbatim and in the context in which they were made:

"I have discussed these instructions with the lawyers before they made their final arguments, so when they referred to some of the instructions, of course I discussed it with them in chambers. * * * [W]e are giving you the instructions. I want you to listen to them carefully, because you are not going to have them with you when you deliberate. I want you to remember them and there is a reason for that too.

"I want to say to you that when I told you you cannot ask any questions I omitted one important thing: When a juror asks a question which could be very well improper and not according to the rules of evidence, it becomes very embarrassing for a lawyer to make an objection, you understand that. When I ask him a question, and I haven't, and I could ask a lot of them, they cannot embarrass me with them or I cannot embarrass them, because we have the training and the capacity and the understanding and the friendship, but when the juror asks a question and they have to sit in judgment on the case, it becomes embarrassing for a lawyer to object to it and if he does, it is in the record and if he doesn't, it antagonizes a juror. When these rules are promulgated they are done for the best interest of justice.

"There is not a case in the world, as a matter of fact there is nothing in the world that has ever been done where somebody cannot ask a question. You cannot take twelve or thirteen minds and try to prevail upon all of them. There is always some doubt in the case about some little thing, but when you get back in the jury room and talk it over amongst yourselves you will find the answers, and if there is a shortcoming in the case one way or the other, it is just part of the case. We don't guarantee you an ironclad, perfect, well-polished, complete litigation. We do the best we can, both sides do the best they can and that's it. That's what you have got to wrestle with, and that is what I have got to wrestle with. So don't feel bad-

ly about not being able to ask questions.

"I shouldn't even explain that to you, but I wanted to do that, because I wanted you to know that everything has a good reason, valid reason. We don't just do it out of caprice or unpleasantness. We would like to have you in on the whole thing. The same with the trial of a case. I had certain reasons when I sustained an objection, because I don't want to retry it again, I don't want to rehash certain parts of it again. You have heard it. If you forget it, that is part of the game, and if I forget it, that's part of the game. That's why we have a court of appeals, they will reverse me if I'm wrong. This is not the final judgment, there is a court of appeals to review me and a Supreme Court to review them. That's why we have a great system here.

"Be happy and content, and I am going to give you my instructions and I will bid you goodbye."

The trial judge then proceeded with the formal instructions.

The defendants contend that the references to "doubts" and "shortcomings" and the manner of their resolution, the injunction against any questions, the observation that if the jury "forget it, that is part of the game", and the statement that "[t]his is not the final judgment" coupled with the reference to review on appeal all constitute reversible errors. Defendants urge that these statements to the jury had the effect of depriving the defendants of the protection against conviction where reasonable doubt exists and of minimizing the jury's function, obligation and responsibility.

The government argues that the statements were not prejudicial when considered in their context and against the background that the trial judge was concerned over information that during the course of the trial a juror had wanted to ask questions [1] and was merely explaining the reason why the court would not permit it.

The flaw in the government's argument is that it assumes that the jurors understood these statements as referring to and restricted to antecedents which made them proper. But the record does not show that they were so limited—and the District Judge recognized that they included subject matter he "shouldn't even explain" to the jury and, in the colloquy between the court and counsel concerning the objections made to the statements, pointed out that in making them he had been "talking generally".

We can only speculate as to how the jury may have understood or applied the statements of which complaint is made. They were made as an introductory part of the formal charge and interspersed between declarations that "we are giving you the instructions" and "I am going to give you my instructions". Emanating as they did from the presiding judge and serving as a preface to, if not a part of, the formal instructions it does not seem unreasonable to conclude that the jurors accorded them equal weight and dignity.

The jurors were told that "doubts" and "shortcomings" were "just a part of the case" but that they would find the "answers" when they discussed the case among themselves. The statement is inconsistent with the jury's duty to acquit if reasonable doubt as to guilt exists.

The jurors were told that they had "heard it" and if they forgot "it" that was "part of the game". From the trial judge's manner of expression it is not clear as to just what "it" refers. The jury may well have understood the reference to be to the evidence. Perhaps the court meant it to refer to his rulings on objections or some explanation thereof. But who can say what the jury took it to mean? And, if the jury forgot a material answer given by a witness there

1. It is not clear from the record whether the allusion is to questions a juror sought to ask or have asked of a witness or of counsel, or to information the juror sought to elicit from the court.

are circumstances in which the defendants, as a matter of right, would be entitled to have the jury informed as to the testimony of the witness. United States v. Jackson, 3 Cir., 257 F.2d 41, 43.

In addition, it was inferred that the jury's determination was not to be the final one but would be reviewed by this Court and the United States Supreme Court. Such dilution of the final responsibility of the jury as was thus inferred as permissible to the jury in its determination of the verdict is prejudicial to a defendant. In People v. Johnson, 284 N.Y. 182, 30 N.E.2d 465, 467, 132 A.L.R. 675, the court reversed a conviction where the trial court permitted the prosecutor to suggest to the jury that even if the jury were to convict the defendant he had a right to appeal to the upper courts and a further right to appeal to the governor. In reversing, the court pointed out (30 N.E.2d p. 467):

"The vice of the statements and questions of the District Attorney lies not primarily in the incorrectness of the statements that an appeal to the Court of Appeals is compulsory but in the suggestion that the jury's verdict, if against the defendant, cannot be seriously harmful to him because of the opportunities for review. This suggestion is fundamentally unsound and vitiates the trial. No element of our judicial process must be more carefully protected than the function of the jury. The jury has nothing to do with appeals and applications for clemency. They lie in a wholly different field. The jurors have task enough to find the truth and proclaim it by their determination without regard to ultimate consequences. Nothing can be permitted to weaken the jurors' sense of obligation in the performance of their duties."

In State v. Mount, 30 N.J. 195, 152 A.2d 343, a conviction was reversed where reference to a defendant's right to appeal was made. The court stated (152 A.2d p. 351):

"When the trial court interrupted to stress that the jury's omission of a recommendation would not necessarily mean death to the defendant because 'we have appeal courts and everything else, so a lot of things could happen,' and to point out that only the other day a murder conviction was 'reversed by the Supreme Court,' it tended to dilute the jury's crucial sense of responsibility."

Cf. Lovely v. United States, 4 Cir., 169 F.2d 386, 391; Demetree v. United States, 5 Cir., 207 F.2d 892, 896; United States v. Louis Gim Hall, 2 Cir., 245 F.2d 338.

Although, as the government contends, jurors may be aware of the existence of courts of appeal, we cannot assume that they are conversant with the precise limitations governing appellate review.

 The evidence and the reasonable inferences arising therefrom, when considered in the light most favorable to the government, as we must do on appeal (United States v. Coduto, 7 Cir., 284 F.2d 464, 466), is sufficient to sustain both convictions. But the trial judge's discourse and the ambiguity of expression with which it was presented require reversal of the convictions.

We have considered the other contentions of each of the defendants and find them without merit. And, inasmuch as the government counsel withdrew the question which had elicited a response of a government witness attributing a post indictment statement to defendant Fiorito indicative of a willingness to commit a subsequent offense, and the court admonished the jury to disregard the answer of the witness, we do not deem it necessary to discuss the contention of error predicated thereon. It is not likely that the incident will reoccur on a retrial.

The judgment order of the District Court in each of the appeals is reversed and the cause remanded for a new trial.

Reversed and remanded for a new trial.