**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John W. DUNCAN,
Defendant–Appellant.**

**No. 87–8148.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 29, 1988.

James W. Ellison (Court-appointed), Burnside, Wall & Daniel, Augusta, Ga., for defendant-appellant.

J. Michael Faulkner, Asst. U.S. Atty., Augusta, Ga., Shelley A. Longmuir, Dept. of Justice, Criminal Div., Washington, D.C., for plaintiff-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

The defendant appeals a jury verdict which found him guilty of kidnapping (18 U.S.C. § 1201) and interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312). The trial judge denied his request for a judgment of acquittal and his alternative motion for a new trial. The defendant was then sentenced to consecutive terms of twenty-five years imprisonment for kidnapping and five years for the § 2312 violation. On appeal, the defendant asserts several alleged trial errors. We will affirm the conviction.

I

In the district court trial, a jury convicted John W. Duncan with abducting nineteen-year-old Elizabeth Whitmire from the parking lot of Wallace Thompson Hospital in Union, South Carolina. Whitmire, a part-time employee of the hospital, was scheduled to work a shift beginning at 10:00 p.m. on the night of September 30, 1986. Shortly before her shift began, Whitmire parked her car in front of the hospital. After she got out of the car, she reached back into it to get some money. The defendant allegedly sneaked up behind her, grabbed her at knife point, and forced her back into the car. As he was driving her away from the hospital, the defendant allegedly told Whit-

* The Honorable Jesse E. Eschbach, Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, is sitting by designation.

mire that he was heading to Dallas, Texas, in order to kill his ex-wife. The defendant drove Whitmire to a wooded area close to Union where he allegedly raped her twice. They then continued driving, only stopping once to buy gasoline, beer and soda at a Fast Fair convenience store in Laurens, South Carolina.

The defendant allegedly ordered Whitmire to drive from the store, and forced her to drink the beer, whereupon she became ill and vomited. The defendant then took over the wheel. At that point, he told Whitmire that he was in search of his ex-wife's landlady, who lived in McCormick, South Carolina. However, the defendant became confused in his directions and inadvertently drove the car west into Georgia. Because of the defendant's erratic driving pattern, a Georgia police officer tried to chase the car but was not able to overtake it. Shortly thereafter, Whitmire noticed a sign which indicated that they were headed in the opposite direction from McCormick. The defendant turned the car around, and was subsequently caught by a Georgia police officer in Lincolnton, Georgia. The officer ordered the defendant out of the car while Whitmire stayed inside. At the officer's instigation, Whitmire got out of the car to give the police officer her driver's license. When the officer asked to see her registration papers, Whitmire went back to the car, handed the officer the papers, and grabbed his arm. When she was safely behind the officer, she told him that she had been kidnapped and raped. The defendant then tried to flee, but was apprehended.

The defendant claims four bases for the reversal of his convictions. First, he claims that the district court erred when it instructed the jury that all of the essential elements that constitute kidnapping need not be established in order to find guilt. Second, he contends that the district court erred when it ruled on his motion in limine

to exclude any testimony or indirect evidence pertaining to the victim's virginity. Third, the defendant argues that the evidence was insufficient to convict him because the evidence did not show beyond a reasonable doubt that he intended to transport the victim in interstate commerce. Finally, he claims that the trial judge erred when he informed the jury that the trial was being transcribed. This information, according to the defendant, reminded the jury that its judgment could be reviewed, and thus made it more likely that the jury would render an erroneous verdict. We reject these contentions and affirm the conviction and sentence.

## II

The defendant alleges that the trial court erred in its closing remarks to the jury by instructing them that they could find the defendant guilty of the kidnapping without a showing of all the essential elements of § 1201.[1] According to the trial transcript, the trial judge instructed the jury:

> Guilt my be established, *without* a showing that the accused did everything constituting the offense charged and acted willfully and he done [sic] it voluntarily, intensionally [sic] with the specific intent to do something that the law forbids. That is to say with a bad purpose to either disobey or disregard the law.

R8–386 (emphasis added). The defendant contends that this jury instruction constitutes reversible error on the kidnapping conviction.

Because at the time that this instruction was given the defendant failed to object to the charge, we will overturn the conviction only for plain error that affects substantial rights. *See* Fed.R.Crim.P. 52(b); *United States v. Brown*, 616 F.2d 844 (5th Cir. 1980). If the trial judge did indeed inform the jury that all of the essential elements

---

1. 18 U.S.C. § 1201(a)(1) provides:
 Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

 (1.) the person is willfully transported in interstate or foreign commerce;
 shall be punished by imprisonment for any term of years or for life.

of the § 1201 kidnapping offense need not be proven beyond a reasonable doubt in order to convict, it would be reversible error, *see Brown v. United States,* 277 F.2d 573, 576 (5th Cir.1960), unless the Government proved that the error was harmless beyond a reasonable doubt. *See Vaccaro v. United States,* 461 F.2d 626 (5th Cir. 1972).

The Government requested a "certificate of error" regarding this aspect of the record on appeal, asking the trial judge to make certain findings with regard to the contested jury instruction. In response, the trial court held a post-trial supplemental hearing. At this hearing, the Court Reporter who transcribed the trial testified that a new computer system was purchased *after* the trial, but that it was used to transcribe the record. Supp.R. 35. During the trial itself, the Court Reporter had used a regular stenotype machine to transcribe the trial onto a stenotape. The Court Reporter then used the stenotape to transcribe the trial into the new computer system. The Court Reporter further testified that the transcript was unexpectedly lengthy and that he got "pushed toward the end" for time. Supp.R. 38. As a result, the first draft of the transcript was filed without being proofread. Supp.R. 38. The Court Reporter subsequently destroyed the stenotape. Supp.R. 35.

Other possible errors in the computer transcription were brought out during the hearing. A "dictionary" is programmed into the computer containing shorthand phonetic abbreviations for various words. When such an abbreviation is typed into the machine during the trial, the computer "knows" what the full word actually is. However, at the time that this trial was transcribed, the entire dictionary had not yet been developed and was only partially programmed with abbreviations. As a result, errors could easily have resulted if there was a typo in an abbreviation, or a conflict in coding. Moreover, the original stenotape used was stored in folds which the Court Reporter had to flip over in order to type into the computer. An error in transcription could have resulted if the Court Reporter flipped over one fold inadvertently.

During the supplemental hearing, the trial judge noted that the challenged section of the jury instructions was grammatically incorrect, incoherent and uncharacteristic of him. The charge appears to begin with an aiding and abetting theory, and seems to conclude with specific intent or willfulness. Supp.R. 12. The trial judge noted that although he did not enter his entire charge to the jury in his handwritten notes, he remembered that he relied on the Former Fifth Circuit pattern instructions and a treatise by Devitt & Blackmar. Supp.R. 13.

Considering all of the evidence before him, the trial judge concluded that the transcript did not reflect the jury charge as he actually gave it. He certified that, according to his best recollection, the jury instruction that he actually gave was as follows:

Guilt may be established without a showing that the accused did everything constituting the offense charged, because the law recognizes that, ordinarily, anything a person can do for himself can be done by directing the acts of another person. So if the acts or conduct of another person are willfully directed or procured by the defendant, the law holds the defendant responsible for the acts and conduct of the other person, just as though he had committed the act or engaged in such conduct himself.

However, it must be shown that the defendant acted willfully; that is, that he did it voluntarily, intentionally, and with the specific intent to do something that the law forbids; that is to say with a bad purpose either to disobey to to disregard the law.

Supp.R. 17–18.

After reviewing all of the evidence provided at the hearing, the trial judge concluded that his jury charge had been improperly transcribed. Our analysis leads us to agree with the trial judge that there was an error in the transcription, and not with the charge itself.

However, even if the trial judge did make the charge as it was transcribed in

the record, we need not reverse the conviction. The primary issue in determining a claim of plain error related to jury instructions is " 'whether this contested part of the charge is so erroneous that when considered in the totality of the charge as a whole and the evidence presented against each appellant, the error is so great as to result in the likelihood of a miscarriage of justice.' " *United States v. Franklin,* 586 F.2d 560, 569 (5th Cir.1978) (quoting *United States v. Smith,* 502 F.2d 1250, 1256 (5th Cir.1974)), *cert. denied sub. nom. Bonamo v. United States,* 440 U.S. 972, 99 S.Ct. 1536, 59 L.Ed.2d 789 (1979). We must determine whether the potential harm caused by the jury charge has been neutralized by the other instructions given at the trial such that reasonable jurors would not have been misled by the error. *See, e.g., Lamb v. Jernigan,* 683 F.2d 1332, 1340–41 (11th Cir.1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983). As the Supreme Court stated in *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 36 L.Ed.2d 368 (1973), "the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. Our review of the record indicates that the trial judge's instructions to the jury both at the early portion of the trial, and immediately preceding the challenged remarks, neutralized any potential harm.

In his instructions to the jury at the *beginning* of the trial, the trial judge emphasized to the jury that *all* of the essential elements to the kidnapping charge had to be proven. Specifically, he informed them:

There are three essential elements, that is three basic things that must be proven by the Government in any kidnapping case. These, of course, must be proven beyond a reasonable doubt and *each of them* must be proven. First that the Defendant knowing and willfully seized,

confined [sic] inveigled and kidnapped the person described in the indictment as charged. Second, that the defendant held such person for ransom or reward or other benefit which the Defendant intended to derive from that kidnapping and that such person was thereafter transported in interstate commerce.

R 7–42 and 7–43 (emphasis added).

Immediately prior to the challenged instruction, the trial judge reiterated this earlier instruction.[2] He told the jury:

[T]here are *two essential elements that are required to be proven* in order to establish this offense charged in count of the indictment [sic] first the act or acts of transporting or causing the transportation of a person in interstate commerce as charged in the indictment and second doing such an act or acts knowingly and willfully and while such person was unlawfully seized, confined, inveigled, kidnapped or carried away and held for ransom, reward or otherwise, as charged.

R 8–385 (emphasis added).

From our review of the record from the supplemental hearing and the trial itself, we conclude that the trial court did not commit reversible error with regard to the challenged jury instruction. The testimony introduced at the supplemental hearing indicated that the possibility of error in transcription was great, so that the challenged jury charge in the transcript probably resulted from a transcription error rather than an error in the actual charge given. The trial judge has concluded and certified that the transcribed jury instruction does not reflect the charge as he actually gave it. However, we need not rely on the trial judge's conclusions alone to conclude that no reversible error was made. Because the jury was instructed by the trial judge both at the beginning of the trial and in his final closing instructions that *all* of the essential elements of § 1201 had to be proven, the defendant was not prejudiced by the asserted error in the jury charge. Any such

---

**2.** It is of no consequence that the trial judge stated that there are two essential elements in this charge, while stating in the earlier charge that there are three essential elements. The substance of the essential elements that he enumerated in both instructions was the same.

error would be harmless in the context of this case.

### III

Prior to the trial, the defendant filed a motion in limine to exclude any testimony or indirect evidence regarding the victim's virginity prior to the alleged rape. The trial judge considered the motion after the jury was selected, but out of the presence of the jury, and ruled:

> [U]ntil or unless specifically authorized there will be no mention by counsel in the presence of the jury of her virginity.... I am not going to give the witness any instructions and I am going to tell the lawyers that they must not give her any instructions to volunteer this information or inject it in anyway [sic] into the proceeding. I am simply going to restrict the Government until or unless I specifically authorize it, that this question about her prior virginal condition may not be propounded, *but I am not going to restrain her,* in some artificially created way, *from telling her version of the story* and from telling what she says to be the truth and the whole truth and if it includes such information then that is necessarily before the jury.

R 6–21, R 6–22 (emphasis added).

The defendant contends that the district court abused its discretion by not excluding all references to the rape, and by failing to restrain the victim from mentioning her prior virginity. He claims that the admission of the evidence was highly prejudicial and irrelevant. During her direct examination, the victim testified that the defendant could not believe that she had been a virgin. She testified: "He thought I was special because I was and he was in love with me." R7–91. She also testified that the rape had been painful and had caused

her to bleed. R7–88 to 90. While Fed.R. Evid. 412[3] has traditionally been applied to restrict introduction of evidence regarding a victim's unchastity, the defendant contends that Rule 412 should also bar introduction of evidence pertaining to a victim's chastity.

Fed.R.Evid. 412 was enacted in 1978 to encourage rape victims to report such crimes by eliminating the fear that irrelevant information about a victim's prior sexual behavior would be used to humiliate and embarass the victim. Thus, Rule 412 has been used to exclude evidence which pertained to the *unchastity* of the victim. *See, e.g., United States v. One Feather,* 702 F.2d 736 (8th Cir.1983); *Moore v. Duckworth,* 687 F.2d 1063 (7th Cir.1982); *United States v. Nez,* 661 F.2d 1203 (10th Cir.1981) (per curiam). Rule 412 was premised on the precept that an accused does not have a constitutional right to present irrelevant evidence, and "reputation and opinion concerning a victim's past sexual behavior are not relevant indicators of the likelihood of her consent to a specific sexual act or of her veracity." *Doe v. United States,* 666 F.2d 43, 47 (4th Cir.1981). However, this Circuit has not yet dealt with the question of whether evidence of a victim's chastity should be admissible under Rule 412.

The defendant relies on the decision in *Government of the Virgin Islands v. Jacobs,* 634 F.Supp. 933 (D.V.I.1986), to argue that evidence of a victim's chastity should be accorded the same treatment under Rule 412 as evidence of her unchastity. In *Jacobs,* the district court was concerned that evidence of the victim's chastity would unduly prejudice the jury against the defendant *who was charged with rape.* However, in the case before us, the defendant is not charged with rape, but with kidnapping. The analysis in *Jacobs* indi-

---

**3.** Fed.R.Evid. 412(a) states: "Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or of assault with intent to commit rape, reputation or opinion evidence of the past sexual behavior of an alleged victim of such rape or assault is not admissible." Three exceptions to this rule are enumerated in Fed.R.Evid. 412(b). Reputation or opinion evidence may be introduced if: the

evidence is constitutionally required to be admitted; the evidence is of past sexual behavior with persons other than the accused, offered by the accused upon the issue of *whether* the accused was the source of the injury; or the evidence is of past sexual behavior with the accused which is offered by the accused to show whether the alleged victim consented to the purported rape.

cates that prejudice against the defendant regarding the *rape* charge was the concern. In the context of this case, the rape evidence was used to refute the defendant's claims that the victim had several opportunities to escape, and that her failure to do so indicates her consent. Since consent is a complete defense to a charge of kidnapping, *see United States v. Chancey*, 715 F.2d 543, 546 (11th Cir.1983), the victim testified that her prior virginity explains her shock and inability to act aggressively to escape. While a defendant may be able to show prejudice from such evidence when he is charged with rape, in the context of this case, it is difficult to determine the prejudicial impact on the kidnapping charge where the rape itself is not at issue.

During the trial, the defense attorney noted that the victim may have had several opportunities to escape. In his brief, the defendant stated that there was no evidence that the victim had been bruised or struck, and that the defendant even handed the victim his knife, which she then placed in the glove compartment without turning it against the defendant. The defendant also argues that the victim did not try to escape from him at the Fast Fair convenience store, and that the sales clerk there thought that they could have been a courting couple.[4] *Jacobs* is premised on the notion that once an accused has been charged with a crime, he has the right to confront his accusers, even if that means a chance to cross-examine and impeach a rape victim's testimony on relevant and probative prior sexual acts. 634 F.Supp. at 938. In this case, the defendant is claiming that the victim acquiesced to the kidnapping. Her testimony of her prior virginity explains why she did not run away, and serves to refute this allegation. We find that in the context of this *kidnapping* case, the evidence was more probative than prejudicial.

The victim's testimony regarding the pain that she endured in the rape refutes the defendant's contention that she was not bruised in any way. Although this evidence is admittedly less probative on the question of consent than evidence of her chastity, because the defendant is not being tried for rape here, we find the evidence more probative than prejudicial.

The defendant also argues that his alleged comments of affection for the victim because she was a virgin do not provide evidence of why the defendant allegedly chose to abduct her. He argues that he allegedly made the comments after the rape, so that her chastity cannot be used to provide a motive for the kidnapping. However, the Government contends that it explains the defendant's actions after the rape and his refusal to let her go free at that point. As the Government correctly points out, under § 1201, almost any purpose satisfies the § 1201 requirement of kidnapping for a benefit. Thus, the rape itself could be introduced as evidence of motivation. *See United States v. McBryar*, 553 F.2d 433, 434 (5th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977).

We note that throughout the course of the trial, the district court judge attempted to limit the use of the rape evidence in the prosecution of the kidnapping charge. He noted to the jury that the defendant was not being prosecuted for rape, but for kidnapping. R 7–44. The trial judge also gave several instructions to the attorneys, when the jury had retired from the courtroom, to limit the use of the rape evidence to the consent issue. Early in the trial, he informed the attorneys: "This case in my opinion can not [sic] be tried correctly or effectively without the mention of the rape. Nevertheless, this case should not be tried as one dedicated to the exploration of the rape. This is a kidnapping case, obviously the rape will be in evidence and some of the sequela of the rape will be in evidence." R6–20. At another juncture of the trial, he reiterated to the attorneys: "I see it [this case] as a matter in which the element of consent or lack of consent is overlapping, both the crime alleged, that is kidnapping

---

**4.** The same clerk also testified that she observed that the victim's legs were trembling when she entered the convenience store with the defendant. R 7–178, 7–181.

and the crime of rape which is an element of the kidnapping charge." R 7–28 and 7–29. He further stated that: "The kidnap includes that rape and the kidnap and rape both include consent.... When the element of consent is brought into this case then it would be error, I believe, to proceed without the admission for the juries [sic] consideration of the details which bear upon the element of consent." R 7–29.

In essence, the trial judge would not permit the introduction of rape evidence unless it was used to refute the allegations of consent by the defendant. The attorneys were not allowed to raise the issue of the victim's virginity. The victim herself was the only one who was allowed to refer to it. R 6–21 and 6–22. The trial judge instructed the attorneys: "I can not [sic] in good conscience and in the exercise of common sense tell a young woman who, if she is telling the truth, holds her virginity as something much to be desired and therefore lamentably lost that she is tongue tied and can not [sic] mention such a factor, if it is relevant to the inquiry." R 6–20, R 6–21.

We note that the evidence of the victim's virginity, which the defendant challenges, came out early during the trial, when the victim was under direct examination as a witness called by the Government. Responding to the Government's line of questioning, the victim gave a chronological accounting of the events that transpired during the night of her alleged abduction. The pertinent testimony occurred when she was describing what happened after the first alleged rape. She first indicated that she had dressed herself in the backseat. R 7–90. The Government then asked her if she had experienced any pain or bleeding. *Id.* The victim indicated that she noticed that she was bleeding. *Id.* The Government then asked her if this bleeding was due to her monthly period, to which she responded. that she had just finished her period a few days previously. *Id.* At this point, the Government asked Whitmire if there was any conversation after she had put her clothes back on. She responded: "Yes, he couldn't believe I was a virgin. He thought I was special because I was and he was in love with me." R 7–91. The

transcript indicates that at *no point* throughout the Government's direct examination of the victim regarding the first rape did the defense attorney object to the admission of *any* of this testimony. Moreover, the trial judge did not make any comments throughout this entire testimony which would indicate that his ruling on the motion in limine had been violated. We note that since the trial judge presided over the entire trial and heard all of the testimony presented, he was in the best position to determine if his ruling had been violated.

Our review of the transcript does not indicate that the Government violated the trial court's ruling on the motion in limine. The Government questioned Whitmire in order to get an accurate accounting of the alleged kidnapping. The victim's response, which revealed her chastity, simply stated the truthful text of the conversation. Her response was relevant to a faithful account of what transpired and was not proffered merely to indicate her chastity. In his ruling on the motion, the trial judge clearly chose not to "tie the victim's hands" if she voluntarily offered relevant and probative testimony about her chastity. Her testimony did not violate the judge's ruling. Although the Government's questions regarding the pain that the victim experienced during the rape may be slightly less probative, we note that at *no* time during the Government's pursuit of this line of questioning did the defense attorney object, nor did the trial judge indicate in any way that his ruling on the motion in limine had been violated.

 Shortly after this · testimony, the Government continued to ask the victim about the remaining events of that same evening. The victim testified that the defendant raped her a second time. The Government again asked the victim if any conversation ensued, to which she replied: "He kept telling me that he loved me and he asked me if I wanted to run away with him and get married." R 7–94, 7–95. Again, the defense attorney did not object to admission of this testimony, nor does he contest this particular segment of Whitmire's testimony on appeal. We highlight

this portion of the trial because it shows that the victim's testimony regarding her conversations with the defendant after the rapes may provide at least a partial insight into the defendant's motivation for raping her a second time, and continuing the abduction. The motivation of rape is admissible to show that the defendant kidnapped for a benefit, a required element of a § 1201 offense. *See McBryar*, 553 F.2d at 434.

Later during the trial and after all of this testimony had been given, the district court judge again instructed the attorneys that evidence of the victim's virginity prior to the alleged rape should not be introduced unless the victim offered it herself to show that she did not consent to the kidnapping. In one of his discussions with the attorneys, in which the jury was excused from the courtroom, the judge stated that: "It would seem that the Government has a mountain of rebuttal evidence (details of the rape), but ... I don't see any need at this time to go into the details of the rape, which is not within the elements of the kidnapping." R 7–210. In addition, he stated: "I view the question of consent with respect to the kidnapping charge and the question of the fact of the rape to be overlapping and whether or not that evidence is to be admitted will be determined by what is brought up, if anything, by the Defendant." R 7–210.

■ The defendant's brief on appeal indicates that his challenge to Fed.R.Evid. 412(a) is solely based on the testimony regarding the conversation after the first rape. He is not alleging that there were any other incidents in which rape evidence was improperly introduced. We thus cannot conclude that the Government surreptitiously circumnavigated the bounds set by the trial judge in admitting the evidence of the rape. The trial judge was in the best position to determine if the Government violated his ruling on the motion in limine. Throughout the trial, he made no statement indicating that his order had been violated. The victim's testimony regarding her conversation with the defendant after the first rape is material to a chronological reconstruction of the evening. At the time of the proffered testimony, the defense attorney himself did not contest admission of the evidence. In light of the trial judge's great care to limit the prejudicial effect of the rape evidence, we find no reversible error.

IV

On appeal, the defendant further contends that the evidence presented at trial was insufficient to convict him for kidnapping, and that his motion for a judgment of acquittal which was made at the conclusion of the Government's case, *see* R 8–343, was erroneously denied. According to the defendant, the Government failed to prove that the defendant intended to carry the victim across state lines against her will. The defendant alleges that this is an essential element of the kidnapping offense. Because the evidence allegedly does not prove beyond a reasonable doubt that the defendant had such an intent, the defendant claims his conviction for kidnapping should be reversed.

■ In reviewing a jury verdict which is attacked as insufficiently supported by the evidence, this Court must view the evidence, and all reasonable inferences flowing from that evidence, in the light most favorable to the Government. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *McBryar*, 553 F.2d at 433; *United States v. Bankston*, 603 F.2d 528, 531 (5th Cir.1979); *United States v. Miller*, 693 F.2d 1051, 1053 (11th Cir.1982). We will uphold that verdict if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Miller*, 693 F.2d at 1053 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982)).

The defendant mistakenly relies on *United States v. McBryar* to argue that under 18 U.S.C. § 1201, the Government must prove his willfulness to carry the victim across state lines. *McBryar* only restates the requirements of § 1201 that were set forth in the Former Fifth Circuit's deci-

sion[5] in *Hattaway v. United States*, 399 F.2d 431 (5th Cir.1968). In *Hattaway*, the Court listed the required elements under § 1201 as transportation in interstate commerce of an unconsenting person who is held for some benefit, such acts done knowingly and willfully. In *McBryar* itself, the defendant conceded that he crossed state lines with the victim, but nothing in the opinion indicates that it was shown, or required to be shown, that he intended to do so. 553 F.2d at 434.

The former Fifth Circuit in *United States v. Bankston*, 603 F.2d 528 (5th Cir. 1979), states that the language of § 1201 "does not require that an offender know that he is crossing state lines. So long as he 'willfully transports' his victim and, in doing so, travels in interstate commerce, he need not do so knowingly." 603 F.2d at 532. The Court in *Bankston* further noted that the " 'requirement that the offender cross state lines merely furnishes a basis for the exercise of federal jurisdiction and does not constitute an element of the offense for kidnapping.' " *Id.* at 532 (quoting *United States v. Napier*, 518 F.2d 316, 319 (9th Cir.1975)). Our Court has adopted this interpretation of § 1201. In *United States v. Leichtman*, 742 F.2d 598 (11th Cir.1984), we stated: "Knowledge of crossing state lines is not an essential element of the kidnapping offense. The requirement that an offender cross state lines merely furnishes a basis for the exercise of federal jurisdiction." *Id.* at 603 n. 5.

The defendant argues that *United States v. McRary*, 665 F.2d 674 (5th Cir.), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1307 (1982), supersedes the decision in *Bankston*. In *McRary*, the Fifth Circuit reversed a kidnapping charge because it found that federal jurisdiction did not exist in that case. The jurisdictional basis asserted in the indictment and in the jury instructions was based on the willful

transport of the victim in foreign commerce,[6] but the Government only provided proof of another basis of jurisdiction, "high seas" jurisdiction.[7] Because the trial judge refused to give instructions that jurisdiction could alternatively be based on "high seas" jurisdiction, the defendant challenged the federal jurisdiction of the district court. In reversing the conviction, the Court of Appeals rejected the Government's argument that the basis for federal jurisdiction was not an element of the offense. The Court stated that "[i]n cases where the issue is *directly* addressed it has been uniformly held that the basis for federal jurisdiction is an essential element of the offense." *Id.* at 679 (emphasis added). This reflects the well established principle that federal jurisdiction must be validly asserted before the federal courts can decide the merits of the contested claim. The Fifth Circuit in *McRary* characterized its decision in *Bankston* as dicta, and interpreted *Bankston* as holding "only that the government need not prove that a defendant *knew* he crossed state lines." *Id.* at 679 (emphasis in original). However, federal jurisdiction was not an issue in *Bankston* as it was in *McRary*.

If we interpreted § 1201 to require proof that the defendant knew he was going to cross state lines, we would be contravening the reasoning behind § 1201. Section § 1201 was enacted to prevent kidnappers from evading capture by moving from one jurisdiction to another. *McRary*, 665 F.2d at 674 (citing *Chatwin v. United States*, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946)). The legislative history of § 1201 indicates that the requirement that the defendant carry the victim across state lines was only used to establish federal jurisdiction of the crime. As the Senate Report indicates: "[T]he law is amended to make the thrust of the offense the kidnapping

---

**5.** Decisions of the Former Fifth Circuit rendered prior to October 1, 1981 are binding on this Court. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

**6.** 18 U.S.C. § 1201(a)(1) confers jurisdiction when the kidnapping occurs in "foreign commerce."

**7.** 18 U.S.C. § 1201(a)(2) provides jurisdiction when kidnapping is perpetrated "within the special maritime and territorial jurisdiction of the United States."

itself rather than the interstate transporting of the kidnapped person." S.REP. NO. 1105, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.CODE CONG. & ADMIN.NEWS 4316, 4317–18.

 Because we find that § 1201, does not require a showing that the defendant intended to cross state lines, we find that the evidence was sufficient to support his conviction.

## V

Finally, the defendant alleges that he was prejudiced by the trial judge's remarks to the jury which complimented the Court Reporter. Specifically, the defendant objects to the following comment:

> Consider for a moment that every word that has been spoken in this Courtroom since 9 o'clock Monday morning has been taken down and is available for transcription should that be required. Every single word, every phrase, has been made a permanent record by a very capable Court Reporter and I think that is deserving of comment from time to time.

R 8–370 and 8–371. The defendant claims these comments by the trial judge served to remind that jury that its decision could be reviewed on appeal. Ostensibly, this statement absolved the jury of responsibility for its verdict, and enabled them to render an erroneous decision.

*United States v. Fiorito*, 300 F.2d 424 (7th Cir.1962), which the defendant relies upon, is not supportive of his stance. In *Fiorito*, the trial judge explicitly instructed the jury that the court of appeals and the Supreme Court would review the judgment. *Id.* at 426. In that situation, the Seventh Circuit concluded that "such dilution of the final responsibility of the jury as was thus inferred as permissible to the jury in its determination of the verdict [was] prejudicial to a defendant." *Id.* at 427. The case pending before us does not present such a problem. The trial judge did not allude to the possibility of review at all, but merely pointed out that the trial proceedings were being recorded—an observation which should have been patently obvious to the jury.

## VI

For all of the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.