[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11876
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-00028-MW-GRJ-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CURTIS KENNEDY WILLIAMS,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 25, 2018)

Before WILLIAM PRYOR, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

In October 2015, Defendant Curtis Kennedy Williams abducted his former girlfriend N.J. and drove her from Florida to Louisiana. During the drive, Defendant threatened N.J. with a gun. Based on this conduct, the jury convicted Defendant on three counts: kidnapping and transporting a person through interstate commerce in violation of 18 U.S.C. § 1201(a)(1) and (2), possessing a firearm in furtherance of a kidnapping in violation of 18 U.S.C. § 924(c)(1)(A) and (2), and possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Defendant appeals, arguing that (1) he was denied a fair trial because N.J. walked into the courtroom wearing a jacket that said "victim advocate" and (2) the district court committed plain error by allowing the Government to introduce 404(b) evidence without providing pretrial notice. After careful review, we affirm.

## I. BACKGROUND

### A. Factual Background

Defendant and N.J. dated for approximately four years, and in March 2015 they had a child together. After the birth of their child, N.J. broke up with Defendant because he was physically abusive and had been seeing another woman, Shakayla Taylor. On October 19, 2015, N.J. dropped their son off at day care and went to class at City College in Gainesville, Florida. While in class, N.J. received a call from the day care facility, indicating that Defendant wanted to see their son.

N.J. told the day care caller and Defendant that Defendant was not allowed to see their child.  In response, Defendant drove to City College and told N.J. that he wanted to speak with her.  N.J. left class to talk to Defendant.

When N.J. met Defendant, he put her in a chokehold and dragged her into his car.  As N.J. struggled with Defendant, Taylor drove them away from City College.  During the drive, N.J. continued to struggle with Defendant and tried to get a hold of his gun.  In order to subdue N.J., Defendant choked her, pointed his gun at her, and bit her.  At some point during the drive, Defendant forced N.J. at gunpoint to walk into the woods, where he raped her.  Taylor then drove them to Taylor and Defendant's apartment in Louisiana.  The next day, law enforcement officers located N.J., Defendant, and Taylor.  The officers arrested Defendant and Taylor and assisted N.J.

## B.  Procedural Background

A grand jury indicted Defendant on three counts:  kidnapping and transporting a person through interstate commerce in violation of 18 U.S.C. § 1201(a)(1) and (2), possessing a firearm in furtherance of a kidnapping in violation of 18 U.S.C. § 924(c)(1)(A) and (2), and possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The Government did not file a pre-trial notice of intent to introduce 404(b) evidence.

At the beginning of the trial, N.J. was called to testify.  N.J. walked into the courtroom wearing a jacket that said "victim advocate."  The jacket was black and said "Alachua County Victim Advocate Sheriff's Office" in yellow letters on the front of the jacket and "victim advocate" in yellow letters on the back of the jacket. N.J. had borrowed the jacket from the Alachua County Sheriff's Office's victim advocate because the courtroom was cold.  When Defendant saw the jacket, he pointed it out to the judge.  The judge asked the jury to leave the courtroom and then had N.J. take the jacket off.

Arguing that the jury had been prejudiced by seeing N.J. wear a "victim advocate" jacket, Defendant moved for a mistrial.  The court denied Defendant's motion for a mistrial, but indicated its willingness to issue a curative instruction. Defendant, however, asked the court not to mention the jacket in this instruction so as not to call further attention to it.  The court thereafter gave a general instruction that the jury must reach its verdict without bias or prejudice:  "Your verdict in this case must not be based on bias, prejudice, or sympathy. You shouldn't rule for somebody because you feel sorry for them or against anyone because you are angry with them. Again, your verdict must be based on the evidence and not bias, prejudice, or sympathy."  Following this instruction, N.J. testified.

During N.J.'s testimony, she described what occurred during the kidnapping. She also told the jury that while they were dating, Defendant was physically

4

abusive. She mentioned that after one incident of domestic abuse, a warrant was issued for Defendant's arrest, a no-contact order was put in place, and N.J. moved to a shelter for victims of domestic violence. N.J. testified that Defendant violated the no-contact order by making harassing and threatening phone calls. Defendant did not object to this testimony.

Taylor also testified about the kidnapping and her relationship with Defendant. Taylor stated that Defendant physically abused her and that she had even suffered a miscarriage as a result of a fight with him. In discussing the kidnapping, Taylor stated that N.J. told her that Defendant had raped her. Defendant did not object to this testimony.

At the conclusion of the trial, the jury found Defendant guilty of all three counts. The court sentenced Defendant to 525 months' imprisonment. Defendant then brought this appeal, raising two issues.

## II. <u>MOTION FOR A MISTRIAL</u>

Defendant argues that he was denied a fair trial because the jury may have been prejudiced against him when jury members saw N.J. in the "victim advocate" jacket. He contends that the district court should have granted his motion for a mistrial. We review the court's denial of the motion for a mistrial for abuse of discretion. *United States v. Barsoum*, 763 F.3d 1321, 1340 (11th Cir. 2014). After careful consideration, we hold that the court did not abuse its discretion.

To be granted a mistrial, a defendant must show substantial prejudice. "Substantial prejudice occurs where there is a reasonable probability that, without the remarks, the result of the trial would have been different." *Id.* (citation omitted). When a district court gives a curative instruction, we only reverse if the evidence is so highly prejudicial that it is incurable by the court's instruction. *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007).

For a defendant to prevail on a claim that he was denied a fair trial in violation of the Sixth Amendment of the Constitution, he must show actual or inherent prejudice. *Woods v. Dugger*, 923 F.2d 1454, 1457 (11th Cir. 1991). Inherent prejudice occurs if "an unacceptable risk is presented of impermissible factors coming into play." *Estelle v. Williams*, 425 U.S. 501, 505 (1976). "[A] risk becomes unacceptable when there is a 'probability of deleterious effects.'" *Woods*, 923 F.2d at 1457, *quoting Williams*, 425 U.S. at 504.

Given this high standard, it is quite rare to reverse a conviction based on an allegation of inherent prejudice. *Woods*, 923 F.2d at 1459. Certainly, it is possible that the attire of individuals in the courtroom can inherently prejudice a jury against a defendant. *See id.* at 1459–60 (holding that jurors were prejudiced by the presence of uniformed officers in the gallery); *Norris v. Risley*, 918 F.2d 828, 834 (9th Cir. 1990) (holding that jurors were prejudiced by spectators wearing "women against rape" pins). But here there was no "probability of deleterious effects"

6

sufficient to warrant a mistrial merely because the jury briefly viewed N.J. wearing the "victim advocate" jacket. N.J. wore the jacket for only a short amount of time; she called no attention to the jacket; the court promptly required her to remove the jacket; and N.J. was not trying to communicate a message to the jury by wearing the jacket. *See Woods*, 923 F.2d at 1457–60 (considering these factors); *Norris*, 918 F.2d at 831–34 (considering these factors). Further, the jury was already well aware of the message contained on the jacket. That is, the jury had already been made aware that the Alachua County Sherriff's Office was involved in the case, and the Government had identified N.J. as "the victim" in its opening statement.

Additionally, the court mitigated any potential prejudice by its curative instruction. *See United States v. Delgado*, 321 F.3d 1338, 1347 (11th Cir. 2003). Instructions from the bench usually cure prejudice, "[e]specially where, as here, the defendant helped formulate the instruction given." *Barsoum*, 763 F.3d at 1340. Indeed, the court was willing to directly advise the jury to ignore the jacket, but Defendant objected to a more explicit instruction.

In short, the district court did not abuse its discretion by denying Defendant's motion for a mistrial.

## III.  RULE 404(B) EVIDENCE

Defendant argues that the Government should not have been allowed to introduce Rule 404(b) evidence of Defendant's prior crimes and bad acts. Federal

7

Rule of Evidence 404(b)(2) requires the Government to provide pretrial notice of any 404(b) evidence. Here, both N.J. and Taylor testified about bad acts and crimes committed by Defendant during their relationship with him and during the kidnapping. Specifically, N.J. testified that Defendant raped her during the kidnapping, that Defendant was physically abusive while they were dating, and that Defendant violated a no-contact order. Taylor testified that Defendant physically abused her and that N.J. told her that Defendant had raped her.

Defendant never objected to any of this testimony during the trial so we review the admission of this evidence for plain error. *United States v. DiFalco*, 837 F.3d 1207, 1221–22 (11th Cir. 2016). We conclude that the district court did not commit plain error by allowing the Government to present this testimony.

We can reverse based on a plain error only if (1) an error occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the integrity, fairness, or public reputation of the judicial proceedings. *Id.* A defendant faces a high bar in obtaining a reversal based on plain error. Indeed, reversal based on plain error rarely occurs. *Id.* First, "[a]n error is not plain unless it is contrary to explicit statutory provisions or to on-point precedent in this Court or the Supreme Court." *United States v. Schultz*, 565 F.3d 1353, 1357 (11th Cir. 2009). Further, for an error to affect substantial rights, the defendant must prove that the error impacted the outcome of the proceedings. *United States v.*

*Henderson*, 409 F.3d 1293, 1308 (11th Cir. 2005). Quoting the Supreme Court, we have noted that "to discharge this burden, the defendant must establish a 'reasonable probability that, but for the error,' the outcome would have been different." *Id.*, *quoting United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Defendant has cited to no on-point precedent from this circuit or the Supreme Court holding that a trial court must sua sponte exclude evidence based on the Government's failure to provide pre-trial notice. Indeed, a court would typically be unaware whether pre-trial notice had been provided, absent being alerted to that fact by the defendant. At any rate, Defendant has not shown that any lack of notice prejudiced his substantial rights. *See United States v. Sonntag*, 684 F.2d 781, 788 (11th Cir. 1982).

As to whether the court should have sua sponte excluded this evidence as being inadmissible on the merits, Rule 404(b) provides that, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "[t]his evidence may be admissible for another purpose," such as proving motive or intent. One element of kidnapping requires that "the defendant acted for any reason which would in any way be of benefit." *United States v. Lewis*, 115 F.3d 1531, 1536 (11th Cir. 1997) (quotation marks omitted) (emphasis

9

omitted).  "The motivation of rape is admissible to show that the defendant kidnapped for a benefit."  *United States v. Duncan*, 855 F.2d 1528, 1536 (11th Cir. 1988).  Moreover, evidence that Defendant had physically abused N.J.—leading to N.J.'s bringing of domestic abuse charges against him—further suggested that the desire for revenge could have motivated Defendant to kidnap her.  Similarly, evidence that N.J. had prevented Defendant from seeing his son likewise tended to establish motive.  Thus even had Defendant objected to this evidence, it is not at all clear that the district court would have abused its discretion by admitting the evidence.

As to Taylor's testimony that Defendant had physically abused her prior to the kidnapping, admission of this evidence might certainly have presented a closer call for the district court had there been an objection.  But arguably this evidence tended to explain why Taylor would have agreed to become part of Defendant's kidnapping scheme.  Further, the Government responds that Defendant's failure to object to this testimony was tactical and purposeful.  That is, the testimony opened the door for Defendant to then elicit evidence about Taylor's bad and violent acts toward Defendant.  At any rate, whether or not the district court could have properly admitted this evidence over objection, there is no on-point precedent from this Court or the Supreme Court holding that the admission of such evidence is unequivocally error, meaning there is no plain error here.

10

Even had the district court plainly erred in admitting this evidence regarding Defendant's prior bad acts, Defendant has not established that there is "a 'reasonable probability that, but for the error,' the outcome would have been different." *Henderson*, 409 F.3d at 1308, *quoting Dominguez Benitez*, 542 U.S. at 83. In fact, Defendant acknowledges on appeal that he would have likely been found guilty even without this evidence. Defendant states, "[T]he Government had all of the evidence it needed . . . to prove each and every element of the charged offenses without resorting to the admission of extrinsic, irrelevant, and prejudicial testimony." As Defendant concedes, the jury was presented with abundant evidence indicating that Defendant was guilty of the charged crimes, including N.J.'s testimony, Taylor's testimony, and physical evidence found in the car and in Taylor and Defendant's apartment.

In short, the district court did not plainly err by admitting the above evidence.

## CONCLUSION

For the foregoing reasons, we **AFFIRM.**